1   John A. Conkle (SB# 117849)
      *j.conkle@conklelaw.com*
2   Jonathan Medrano (SB# 251729)
      *j.medrano@conklelaw.com*
3   CONKLE, KREMER & ENGEL
    Professional Law Corporation
4   3130 Wilshire Boulevard, Suite 500
    Santa Monica, California  90403-2351
5   Phone: (310) 998-9100 • Fax: (310) 998-9109

6   Attorneys for Defendant Lane's End
    Stallions, Inc.

7

8                UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  KNC INVESTMENTS, LLC, a              CASE No. **CV 10   8880** –MMM
    California limited liability company;                              (Ex)
12  and JERRY JAMGOTCHIAN, an
    individual ,
13                                        **NOTICE    OF    REMOVAL    OF**
                  Plaintiffs,            **ACTION UNDER 28 U.S.C. §1441(b)**
14                                        **(DIVERSITY)**
         v.
15
    LANE'S END STALLIONS, INC., a
16  Texas corporation; ASHLEY
    ANDREWS, an individual; ROBERT
17  B. RAPHAELSON, an individual; and
    DOES 1 through 10, inclusive,
18
                  Defendants.
19

20

21

22       TO THE CLERK OF THE ABOVE-ENTITLED COURT:

23

24       PLEASE TAKE NOTICE that Defendant Lane's End Stallions, Inc. ("Lane's

25  End"), hereby removes to this Court the State Court Action described below.

26  Defendants Ashley Andrews ("Andrews"), and Robert B. Raphaelson ("Raphaelson")

27  have joined in this Notice of Removal filed by Defendant Lane's End pursuant to the

28

1  Joinders in Notice of Removal filed concurrently herewith. In furtherance of this
2  removal, Lane's End states as follows:

3

4        1.      On October 14, 2010, an action was commenced in the Superior Court of
5  the State of California for the County of Los Angeles entitled KNC INVESTMENTS,
6  LLC. et al., v. LANE'S END STALLIONS, INC., et al., as Case No. BC447488 ("State
7  Court Action"). A copy of the Complaint in the State Court Action is attached as
8  Exhibit A.

9

10       2.      The first date upon which any Defendant received a copy of the said
11 Complaint was on October 19, 2010, when Defendant Andrews received a copy of the
12 said Complaint and a summons from the state court. A copy of the State Court Proof of
13 Service of Summons on Defendant Andrews is attached as Exhibit B. The last date
14 upon which any Defendant received a copy of the said Complaint was on November 11,
15 2010, when Defendant Lane's End received a copy of said Complaint and a summons
16 from the state court. A copy of the State Court Summons on Defendant Lane's End is
17 attached as Exhibit C. Thus, this Notice of Removal is filed within thirty (30) days of
18 service of the Complaint on both the first-served and last-served defendants and is
19 therefore timely under 28 U.S.C. § 1446(b).

20

21       3.      This is a civil action of which this Court has original jurisdiction under 28
22 U.S.C. § 1332 and is one which may be removed to this Court by Defendants pursuant
23 to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of
24 different states and the amount in controversy exceeds the sum of $75,000, exclusive of
25 interest and costs.

26

27

28

**Amount in Controversy**

4.     Plaintiffs' State Court Action seeks declaratory relief.  In a declaratory relief action, the amount in controversy "is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).

5.     The litigation involves the potential sale of shares in two Thoroughbred stallion syndicates, one share in the LEMON DROP KID Syndicate and one share in the KINGMAMBO Syndicate; the rights of Syndicate Members in the respective syndicates to exercise rights of first refusal to purchase such shares; and the terms on which the Syndicate Members in the respective syndicates may exercise their rights of first refusal to purchase such shares.  The purchase price for the KINGMAMBO share as between KNC as buyer and Andrews and Raphaelson as sellers is $125,000 with a $50,000 commission to be paid to Jamgotchian. (Compl., Ex. A, ¶ 24.)  The purchase price for the LEMON DROP KID share as between KNC as buyer and Andrews as seller is $300,000 with a $50,000 commission to be paid to Jamgotchian. (Compl., Ex. A, ¶ 23.)

6.     Thus, the object of this declaratory relief action exceeds $75,000, exclusive of fees and costs.

**Complete Diversity**

7.     Complete diversity of citizenship exists.

8.     Plaintiff KNC Investments, LLC ("KNC") is a California limited liability company with its principal place of business in Manhattan Beach, California.  KNC's sole members are Jerry Jamgotchian, Patricia Jamgotchian, Nicole Jamgotchian and

1 | Krista Jamgotchian, all of whom are citizens of the State of California, both currently
2 | and when the state court action was filed.

3 |

4 |      9.     Plaintiff Jerry Jamgotchian ("Jamgotchian") is an individual, and as stated
5 | above, is a citizen of the State of California, currently and when the state court action
6 | was filed.

7 |

8 |      10.    Defendant Lane's End is a corporation incorporated under the laws of the
9 | State of Texas and having its principal place of business in the State of Texas.

10 |

11 |      11.    Defendant Andrews is an individual and a citizen of the State of
12 | Connecticut, currently and when the state court action was filed.

13 |

14 |      12.    Defendant Raphaelson is an individual and a citizen of the State of
15 | Nevada, currently and when the state court action was filed.

16 |

17 |      13.    None of the Defendants is a citizen of the State of California.

18 |

19 | **Procedural Statements**

20 |      14.    Venue is proper in this District pursuant to 28 U.S.C. § 1446(a) because
21 | the Los Angeles Superior Court, where the State Court Action was filed and had been
22 | pending prior to removal, is a state court within this federal district and division.

23 |

24 |      15.    Lane's End will promptly serve Plaintiffs with this Notice of Removal as
25 | required under 28 U.S.C. § 1446(d).

26 |

27 |      16.    Lane's End will promptly file a copy of this Notice of Removal with the
28 | clerk of the Los Angeles Superior Court as required under 28 U.S.C. § 1446(d).

17.    Additional process, pleadings and orders which have been served on Defendant Lane's End by Plaintiffs KNC and Jamgotchian are attached as follows:

Civil Case Cover Sheet as <u>Exhibit D</u>

Civil Case Cover Sheet Addendum as <u>Exhibit E</u>

Notice of Case Assignment as <u>Exhibit F</u>

Notice of ADR Programs as <u>Exhibit G</u>

Affidavit of Prejudice  as <u>Exhibit H</u>

Notice of Ruling re Peremptory Challenge as <u>Exhibit I</u>

Notice of Case Management Conference as <u>Exhibit J</u>

Pursuant to 28 U.S.C. § 1446(a), the documents attached as Exhibit A and Exhibits C through J constitute a copy of all process, pleadings and orders served upon Lane's End in the State Court Action.

1    18.    By filing this Notice of Removal, Lane's End does not admit or submit to

2  personal jurisdiction in the State of California or waive any defenses to this action

3  based on lack of personal jurisdiction.

4

5

6

7  Dated:  November 18, 2010              John A. Conkle

8                                          Jonathan Medrano, members of
                                            CONKLE, KREMER & ENGEL
9                                          Professional Law Corporation

10

11

12                                  By: _____
                                            Jonathan Medrano
13                                          Attorneys   for   Defendant   Lane's   End

14                                          Stallions, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2220.002\9995

NOTICE OF REMOVAL OF ACTION

# Exhibit A

1  Ronald S. Caswell (SBN 161113)
   Caswell & Cannon
2  1625 Warnall Avenue, Suite 100
   Los Angeles, California 90024
3  Telephone: (310) 282-8150
   Facsimile:  (310) 282-8140
4

5  Attorney for Plaintiffs,
   KNC INVESTMENTS, LLC. and JERRY
6  JAMGOTCHIAN

CONFORMED COPY
OF ORIGINAL FILED
Superior Court of California

OCT 1 4 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
RIGENA LOPEZ

7

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF LOS ANGELES

10                                                    BC447488

11  KNC INVESTMENTS, LLC. a California      )  CASE NO.
    limited liability company; and JERRY    )
12  JAMGOTCHIAN, an individual,             )
                                            )  COMPLAINT OF PLAINTIFFS KNC
13             Plaintiffs,                   )  INVESTMENTS, LLC AND JERRY
                                            )  JAMGOTCHIAN FOR DECLARATORY
14  vs.                                      )  RELIEF
                                            )
15  LANE'S END STALLIONS, INC., a Texas     )
    corporation; ASHLEY ANDREWS, an         )
16  individual; ROBERT B. RAPHAELSON, an    )
    individual; and DOES 1 through 10, inclusive, )
17                                          )
               Defendants.                   )
18

19

20      Plaintiffs KNC Investments, LLC and Jerry Jamgotchian allege as follows:

21

22                          FIRST CAUSE OF ACTION

23                (Declaratory Relief - Against all Defendants)

24      1.     Plaintiff KNC Investments, LLC is a California limited liability company with its

25  principal place of business in Manhattan Beach, California ("KNC").

26      2.     Plaintiff Jerry Jamgotchian is an individual residing in the County of Los Angeles, State

27  of California. ("Jamgotchian"). KNC and Jamgotchian collectively "Plaintiffs").

28

_____
                 COMPLAINT FOR DECLARATORY RELIEF
                                1

3.     Plaintiffs are informed and believe and on that basis allege that defendant Lane's End Stallions, Inc., is a Texas corporation authorized to do business and doing business in the State of California and the State of Kentucky ("Lane's End").

4.     Plaintiffs are informed and believe and on that basis allege that defendant Ashley Andrews is an individual residing in Darien, Connecticut ("Ashley").

5.     Plaintiffs are informed and believe and on that basis allege that defendant Robert B. Raphaelson is an individual residing in Las Vegas, Nevada ("Raphaelson").

6.     Defendants Andrews and Raphaelson are joined as defendants because in their absence this Court cannot accord complete relief among the other parties to this action, and any judgment rendered in the absence of Andrews and Raphaelson may prejudice their ability to protect their interest in later litigation or may expose them to a risk of additional liability or inconsistent obligations.

7.     Plaintiffs are ignorant of the true names and capacities of those defendants sued fictitiously herein as DOES 1 through 10, inclusive, and are informed and believe and on that basis allege that said defendants are legally responsible in some manner or capacity for the acts complained of herein. Upon ascertaining the name or names of said defendants, Plaintiffs will amend this Complaint to reflect their true names and capacities. (Lane's End, Ashley, Raphaelson, and DOE defendants hereinafter collectively "Defendants.")

8.     Plaintiffs are informed and believe and on that basis allege that at all times herein mentioned, each of the named defendants and fictitiously named defendants was the agent, principal, employee, alter ego, controlling person or co-conspirator of each of the remaining defendants, and in doing the acts herein alleged, was acting within the scope of such agency, conspiracy, or relationship and with the permission and consent of the other remaining defendants, and each and every defendant ratified and confirmed the acts of each and every other defendant.

9.     Under the terms of the written contracts that are the subject of this declaratory relief action (discussed below), as is set forth on page two therein, all parties agreed that venue for any action to enforce, interpret or to seek redress for a breach of the contracts is the Los Angeles County Superior Court, shall be the judicial district where buyer KNC, a California company, signed the agreements.

---

COMPLAINT FOR DECLARATORY RELIEF

10.    Lemon Drop Kid is a valuable thoroughbred stallion that is owned by a syndicate which generates income from the stallion through breeding fees (the "Lemon Drop Kid Syndicate").

11.    Kingmambo is a valuable thoroughbred stallion that is owned by a syndicate which generates income from the stallion through breeding fees (the "Kingmambo Syndicate"; the Kingmambo Syndicate and the Lemon Drop Kid Syndicate collectively the "Syndicates".)

12.    The Syndicates function in many ways like a limited liability corporation; members purchase shares in the Syndicates which represent the members' fractional ownership interest in the horse that is the subject of each syndicate.

13.    The ownership of shares in Lemon Drop Kid and Kingmambo are governed by virtually identical syndicate agreements (the "Syndicate Agreements"), which place obligations on the syndicate members (the "Syndicate Members" or "Owners") and fiduciary duties upon the Syndicate Manager/Agent, when an offer is made to purchase shares in the subject stallion.   True and correct copies of the Lemon Drop Kid Syndicate Agreement and the Kingmambo Syndicate Agreement are attached hereto as Exhibits "A," and "B," respectively.

14.    Land's End is the Syndicate Manager/Agent for the Syndicates.

15.    Defendant Andrews owns one share in the Lemon Drop Kid Syndicate, which is subject to the Lemon Drop Kid Syndicate Agreement.  Andrews purchased the share for the sum of $575,000.

16.    Defendants Andrews and Raphaelson together own one share in the Kingmambo Syndicate, which is subject to the Kingmambo Syndicate Agreement.   Andrews and Raphaelson purchased the share for the sum of $350,000

17.    Under the terms of the Syndicate Agreements, when an offer to purchase is made to a Syndicate Member that the Syndicate Member intends to accept (the "Original Share Offer"), the selling Syndicate Member must notify the Syndicate Manager/Agent of the Original Share Offer.

18.    Under the terms of the Syndicate Agreements, once notified of an Original Share Offer, the Syndicate Manager/Agent must _immediately_ advise the other Syndicate Members of the Original Share Offer and provide them with seven business days within which to exercise a contractual right of first refusal to purchase the share under the exact same terms and conditions set forth in the Original Share Offer.

---

COMPLAINT FOR DECLARATORY RELIEF
3

Exhibit A
Page 3 of 54

19.    Since the Syndicate Manager/Agent and the Syndicate Members are bound to the terms of the Original Share Offer through the Syndicate Agreements, they are third party beneficiaries to the agreements and venue for any action by the Syndicate Manager/Agent or the Syndicate Members to enforce, interpret or to seek redress for a breach of the contracts is, pursuant to the KNC Agreements, the Los Angeles County Superior Court, the judicial district where KNC, the buyer, signed the agreements.

20.    If none of the Syndicate Members advises the Syndicate Manager/Agent of an intent to meet the exact same terms and conditions of the Original Share Offer within seven business days of receipt of notice, the Syndicate Member who received the Original Share Offer can proceed with the sale ten business days after providing notice of the Original Share Offer to the Syndicate Manager/Agent.

21.    On or about September 6, 2010, KNC made offers to Andrews and Raphaelson to purchase their shares of Lemon Drop Kid and Kingmambo.

22.    Plaintiff Jamgotchian acted as a dual agent in the proposed transactions. In accordance with both California and Kentucky law, Jamgotchian's role and commissions (which include significant fees and related transaction costs incurred by Jamgotchian), were consented to in writing by both the sellers and the potential purchaser, KNC, as is required under California Business & Prof. Code §19525 and KRS 230.357. A true and correct copy of KRS 230.357 is attached hereto as Exhibit "C."

23.    On September 7, 2010, Andrews, KNC and Jamgotchian entered into a Confidential Agreement of Purchase and Sale (the "Lemon Drop Kid Agreement") (the confidential nature of the agreement has since been waived), under the terms of which KNC agreed to purchase Andrews' share of the Lemon Drop Kid Syndicate for the sum of $350,000, $50,000 of which was to be paid to Jamgotchian as the dual agent for the transaction. A true and correct copy of the Lemon Drop Kid Agreement is attached hereto as Exhibit "D."

24.    On September 7, 2010, Andrews and Raphaelson, KNC and Jamgotchian entered into a Confidential Agreement of Purchase and Sale (the "Kingmambo Agreement") (the confidential nature of the agreement has since been waived), under the terms of which KNC agreed to purchase Andrews' and Raphaelson's share of the Kingmambo Syndicate for the sum of $175,000, $50,000 of which was to be paid to Jamgotchian as the dual agent for the transaction. A true and correct copy of the

1   Kingmambo Agreement is attached hereto as Exhibit "E." (The Lemon Drop Kid Agreement and the

2   Kingmambo Agreement hereinafter collectively referred to as the "KNC Agreements.")

3       25.     Andrews and Raphaelson agreed to sell their shares to KNC because the thoroughbred

4   horse racing industry is experiencing one of the worst down markets in the history of thoroughbred

5   racing and both wanted to cut their losses, which will continue to mount as the market further

6   disintegrates.

7       26.     On September 7, 2010, Andrews and Raphaelson gave notice to Land's End, the

8   Syndicate Manager/Agent, that they intended to accept Original Share Offers (the KNC Agreements)

9   from KNC for their shares in the Lemon Drop Kid Syndicate and the Kingmambo Syndicate.

10      27.     On September 15, 2010, in violation of the venue provisions contained in the KNC

11  Agreements, Lane's End, as Managing Member of the Syndicates, commenced litigation in the Kentucky

12  Circuit Court, Civil Action No. 10-CI-475, seeking and obtaining an ex parte restraining order because

13  Andrews and Raphaelson had not disclosed the commissions due and owing with respect to the KNC

14  Agreements.

15      28.     On September 16, 2010, all of the terms of the KNC Agreements, including the terms of

16  the commission, were disclosed to Lane's End in fulfillment of the Restraining Order.

17      29.     On September 29, 2010, in further violation of the venue provisions set forth in the KNC

18  Agreements, and the laws pertaining to dual agencies, Lane's End amended its original Petition to seek

19  from the Kentucky court a temporary and permanent injunction that would rewrite the agreements to

20  reduce the commissions to be paid to Plaintiff Jamgotchian.

21      30.     Under California Business & Prof. Code §19525(d) and KRS §230.357 (4), (5), it is

22  completely lawful for a person to act as a dual agent for both the purchaser and seller in a transaction

23  involving the sale/purchase of an interest in a horse, so long as both the purchaser and seller have prior

24  knowledge of the transaction and consent to it in writing.

25      31.     Under California Business & Prof. Code §19525(e) and KRS §230.357 (4), (5), it is

26  completely lawful for a person to act as a dual agent for both the purchaser and seller in a transaction

27  involving the sale/purchase of an interest in a horse, and to receive commission in excess of $500, so

28  long as: (1) the amount of the commission and the party paying the commission disclose the commission

---

COMPLAINT FOR DECLARATORY RELIEF
5

1   to the principals (owners) for whom the agent is acting, and (2) each principal (owner) for whom the

2   agent is acting consents to the commission in writing.

3       32.     Under California Business & Prof. Code §19525(h) and KRS §230.357(4),(5), a contract

4   for the payment of commission is completely enforceable so long as (1) the contract is in writing and

5   has been signed by the party against whom enforcement is sought, and (2) the recipient of the

6   compensation provides a written bill of sale for the transaction in accordance with California Business

7   & Prof. Code §19525 19525(b)(1).

8       33.     An actual controversy has arisen and now exists between Lane's End, Andrews,

9   Raphaelson, and Plaintiffs concerning their respective rights and obligations under the KNC

10  Agreements.

11      34.     Land's End contends that under the terms of the Syndicate Agreements and the KNC

12  Agreements:

13          (a)     Each member of the Syndicates must pre-approve and later sign any agreement

14  by another member to sell the latter member's share in the Syndicate before the agreement is valid.

15          (b)     Each member of the Syndicates must pre-approve and later sign any agreement

16  by another member to pay commission in connection with the sale of the latter member's share in the

17  Syndicate before the commission agreement is valid.

18          (c)     The obligation to obtain the seller's consent to a commission is not satisfied under

19  KRS §230.357(4),(5) (as a contract entered into in Los Angeles, California, California Business & Prof.

20  Code §19525), unless every member of the Syndicates agrees to the commission, prior to the selling

21  member entering into a contract to sell his shares in the Syndicates.

22          (d)     Since the sellers (Andrews and Raphaelson) did not obtain the consent of every

23  other member of the Syndicates to the commission and sale agreements prior to entering into the

24  agreements, the commission agreements are invalid and any member wishing to exercise its right of first

25  refusal to purchase the Shares may do so by paying a reasonable and customary commission rate for the

26  Shares.

27          (e)     Notwithstanding the venue provisions in the KNC Agreements, the Kentucky

28  Circuit Court has jurisdiction to interpret and enforce the provisions of the KNC Agreements.

---

COMPLAINT FOR DECLARATORY RELIEF

35.   Plaintiffs, however, contend that:

(a)   Each member of the Syndicates need not pre-approve and later sign any agreement by another member to sell the latter member's share in the Syndicate before the agreement to sell a share in the Syndicates is valid and enforceable.

(b)   Each member of the Syndicates need not pre-approve and later sign any agreement by another member to pay commission in connection with the sale of the latter member's share in the Syndicate before the commission agreement is valid and enforceable.

(c)   Under the rules governing the interpretation of contracts, the obligation to obtain the seller's consent to a commission has been satisfied under KRS §230.357 (4),(5) and California, California Business & Prof. Code §19525), once the sellers alone, Andrews and Raphaelson, have agreed to the commission in writing, and Andrews and Raphaelson need not obtain the approval and written consent of any other member of the Syndicates to Jamgotchian's commission, prior to Andrews and Raphaelson entering into contracts to sell their shares in the Syndicates.

(d)   Under the rules governing the interpretation of contracts, Andrews and Raphaelson did not have to obtain the consent of every other member of the Syndicates to the commission and sale agreements prior to entering into the agreements, the commission agreements are valid and any member wishing to exercise its right of first refusal to purchase the Shares may do so by paying the commission stated in the agreements.

(e)   Because of the venue provisions in the KNC Agreements, which were negotiated and agreed-to by the parties thereto, who are residents of California, Connecticut, Nevada and Texas, the Kentucky Circuit Court is not the proper venue for any action to interpret and enforce the KNC Agreements, this Court is the proper court to interpret and enforce the agreements, and Lane's End must be ordered to obtain a stay in the Kentucky Circuit Court of Civil Action No. 10-CI-475 pending resolution of the issues by this Court.

36.   Plaintiffs, on information and belief, allege that defendants Andrews and Raphaelson, desire to have the KNC Agreements enforced in accordance with the agreed-upon terms in order to put an end to their ongoing and increasing losses in the shares of the Syndicates.

---

COMPLAINT FOR DECLARATORY RELIEF

37.    Plaintiffs further allege on information and belief that Andrews and Raphaelson support Plaintiffs' interpretation of the rights and obligations of the parties under the KNC Agreement and the Syndicate Agreement, as the interpretation offered by Land's End would place Andrews and Raphaelson in breach of the KNC Agreements, thereby exposing both to significant liability.

38.    Plaintiffs desire a judicial determination of the rights and duties of the parties and a declaration as to the continuing obligations of the parties under the KNC Agreements and the Syndicate Agreements.

39.    A judicial determination is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights and duties under the KNC Agreements and the Syndicate Agreements.  Plaintiffs have suffered and will continue to suffer damages as more fully described herein so long as the obligations under the KNC Agreements and the Syndicate Agreements remain undetermined.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For a declaration of the Court as follows:

(a)    Each member of the Syndicates need not pre-approve and later sign any agreement by another member to sell the latter member's share in the Syndicate before the agreement to sell a share in the Syndicates is valid and enforceable.

(b)    Each member of the Syndicates need not pre-approve and later sign any agreement by another member to pay commission in connection with the sale of the latter member's share in the Syndicate before the commission agreement is valid and enforceable.

(c)    Under the rules governing the interpretation of contracts, the obligation to obtain the seller's consent to a commission has been satisfied under KRS §230.357 (4),(5) and California, California Business & Prof. Code §19525), once the sellers alone, Andrews and Raphaelson, have agreed to the commission in writing, and Andrews and Raphaelson need not obtain the approval and written consent of any other member of the Syndicates to Jamgotchian's commission, prior to Andrews and Raphaelson entering into contracts to sell their shares in the Syndicates.

---

COMPLAINT FOR DECLARATORY RELIEF

1         (d)    Under the rules governing the interpretation of contracts, Andrews and

2 Raphaelson did not have to obtain the consent of every other member of the Syndicates to the

3 commission and sale agreements prior to entering into the agreements, the commission agreements are

4 valid and any member wishing to exercise its right of first refusal to purchase the Shares may do so by

5 paying the commission stated in the agreements.

6         (e)    Because of the venue provisions in the KNC Agreements, which were negotiated

7 and agreed-to by the parties thereto, who are residents of California, Connecticut, Nevada, and Texas,

8 the Kentucky Circuit Court is not the proper venue for any action to interpret and enforce the KNC

9 Agreements, this Court is the proper court to interpret and enforce the agreements, and Lane's End is

10 ordered to obtain a stay in the Kentucky Circuit Court of Civil Action No. 10-CI-475 pending resolution

11 of the issues by this Court.

12        2.    For reasonable attorneys' fees;

13        3.    For costs of suit; and

14        4.    For such other relief as this Court deems proper.

15

16 DATED: October 14, 2010         CASWELL & CANNON

17

18                   By

19                        Ronald S. Caswell
                              Attorneys for Plaintiffs, KNC INVESTMENTS,
                              LLC, and JERRY JAMGOTCHIAN

20

21

22

23

24

25

26

27

28

---

COMPLAINT FOR DECLARATORY RELIEF

# EXHIBIT A

LEMON DROP KID SYNDICATE AGREEMENT made and entered into as of November 30, 2000, by and among Jeanne Vance, 1680 South Ocean Blv'd, Manalapan, Florida 33462 (hereinafter sometimes called the "Initial Owner"), W. S. Farish, 1100 Louisiana Street, Suite 1200, Houston, Texas 77002 (hereinafter sometimes called the "Initial Purchaser"), and Lane's End Stallions, Inc., P. O. Box 626, Versailles, Kentucky 40383 (hereinafter sometimes called the "Syndicate Manager").

The Initial Owner owns outright the Thoroughbred LEMON DROP KID (c. 1996) by KINGMAMBO o/o CHARMING LASSIE by SEATTLE SLEW and desires to transfer ownership of LEMON DROP KID into syndicate form and to provide for the management and supervision of LEMON DROP KID. Accordingly the parties agree as follows:

1. OWNERSHIP

1.1. Effective Time; Fractional Interests. This Agreement shall become effective and the syndicate created hereby shall come into existence at the time that this Agreement is executed by or on behalf of the Initial Owner and the Syndicate Manager. At such time of syndication, ownership of LEMON DROP KID shall be divided into and represented by forty (40) equal fractional ownership interests ("Fractional Interests"), which Fractional Interests are numbered 1 through 40. Fractional Interests numbered 1 through 8 shall be initially vested in the Initial Owner and Fractional Interests numbered 9 through 40 shall be initially vested in the Initial Purchaser. Fractional Interests shall be evidenced by a copy of this Syndicate Agreement, attached to and made a part of a Certificate to be issued by the Syndicate Manager. A Fractional Interest shall be transferable as provided herein, shall otherwise be entitled to equal rights and privileges and subject to equal duties and obligations with every other Fractional Interest, and shall be subject to all of the terms and conditions of this Agreement. The owner of a Fractional Interest, including the Initial Owner and the Initial Purchaser, is hereinafter sometimes called an "Owner". Ownership of each Fractional Interest and transfers thereof shall be recorded in syndicate books to be kept and maintained by the Syndicate Manager.

1.2. Expenses. Each Owner shall be obligated to pay his proportionate share of (a) the costs and expenses incurred in connection with the breeding, maintenance, and care of LEMON DROP KID, (b) the prevailing rate for stallion keep, and (c) the nomination fees and other expenses incident to operation of the syndicate as herein provided.

1.3. Obligations. On or before September 1 following each breeding season, each Owner shall, or shall cause his nominee to, notify the Syndicate Manager of the final pregnancy status of each mare bred on a Nomination allocable to his Fractional Interest.

1.4. Joint Ownership. Each Fractional Interest shall be indivisible, but may be owned jointly by two or more parties provided all parties and their respective interests shall have been identified to the Syndicate Manager at the time ownership is acquired. The Owners and the Syndicate Manager shall be entitled to deal with and to accept and rely upon and act upon any information, instructions or facts represented by any one of such parties. If a Fractional Interest is held by a corporation, partnership or similar entity, the Owners and the Syndicate Manager shall be entitled to deal with and accept and rely upon any information, instructions or facts represented by any officer of the

corporation, partner of a partnership, manager of the entity, or other person having authority to act for the Owner. Only a full Fractional Interest shall have any rights hereunder.

1.5.  Relationships.  The Owners agree that (a) their relationship shall be that of tenants in common of a chattel possession of which shall be as provided herein, and (b) the relationship of the Owners to the Syndicate Manager shall be that of principal and agent, with the agency of the Syndicate Manager being one that is coupled with an interest in LEMON DROP KID. The Owners waive any right which they may otherwise have to demand the partition, or sale for partition, of LEMON DROP KID and agree that the sole and adequate means by which any Owner may divest himself of his interest in LEMON DROP KID shall be by the transfer of his Fractional Interest.

## 2.  INITIAL OWNER AND PURCHASER

2.1.  Representations.  The Initial Owner represents and warrants that at the time of syndication (a) she will own LEMON DROP KID free and clear of all liens and encumbrances whatsoever,  (b) she will have good right and full power and authority to execute, deliver and perform this Agreement and to transfer ownership of LEMON DROP KID into syndicate form as herein provided, (c) any and all Fractional Interests sold by the Initial Owner will be sold subject to the terms of this Agreement, and (d) she has not granted any right, claim or interest in or to breed to LEMON DROP KID except as provided herein. THE INITIAL OWNER AND INITIAL PURCHASER MAKE NO REPRESENTATIONS OR WARRANTIES EXCEPT SUCH AS ARE SPECIFICALLY SET FORTH HEREIN AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR AS TO THE FITNESS OF LEMON DROP KID OR HIS SEMEN FOR ANY PARTICULAR PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

2.2.  Evidence of Syndication.  The Jockey Club certificate for LEMON DROP KID shall be endorsed by the Initial Owner to the syndicate created hereby and delivered in accordance with the instructions of the Syndicate Manager.

## 3.  BREEDING

3.1.  Nominations.  During the first five breeding seasons that LEMON DROP KID stands at stud, the Owner of each Fractional Interest shall be entitled to two Nominations (as hereinafter defined) and during each breeding season thereafter the Owner of each Fractional Interest shall be entitled to one Nomination, in each case, subject to the provisions governing a reduced book.

3.2.  First Breeding Season.  During the first breeding season that LEMON DROP KID stands at stud, the Syndicate Manager, in its sole discretion, may refuse to permit any mare barren in both of the two preceding years or which is 17 years of age or older to be bred to LEMON DROP KID. During such first breeding season, each mare nominated or offered for breeding to LEMON DROP KID must be certified in writing by a qualified veterinarian to be clean and sound for breeding and the owner thereof must have agreed, at his own expense, to have a veterinarian examine such mare for pregnancy within 45 days after breeding and to send the report of such examination to the Syndicate Manager.

- 3

3.3. Normal Book. For each breeding season, the Owner of each Fractional Interest shall be entitled to the Nominations provided in paragraph 3.1, the Syndicate Manager shall be entitled to five Nominations, and one Nomination may be offered for sale and sold by the Syndicate Manager to defray the costs of nominating LEMON DROP KID to the program of Breeders' Cup Limited. At the election of the Syndicate Manager in consultation with the Initial Owner, one additional Nomination may be sold and the proceeds used to support the National Thoroughbred Racing Association or any similar organization which has as one of its primary purposes promoting Thoroughbred racing. All such Nominations are collectively called the "normal book". The Nominations of the Syndicate Manager are transferable only for each breeding season in which it acts in such capacity.

3.4. Nomination. A "Nomination" is the right to breed one Thoroughbred mare to LEMON DROP KID in a breeding season. Once a Nomination has first been used in any one breeding season for a mare to be covered by LEMON DROP KID, no other mare may be substituted for breeding in that breeding season unless the Syndicate Manager, in its sole discretion, approves substitution for a mare certified to be dead or certified by a veterinarian to be both barren and unsound for breeding for the remainder of the breeding season. Each Nomination shall be noncumulative from one breeding season to another and without right of return in any subsequent breeding season for any reason whatsoever. Any Nomination which is not used or availed of in any one breeding season, except in the event of a reduced book as set forth below, shall not be carried over into another breeding season, but shall be lost. Without the consent of the Syndicate Manager, no mare may be covered on more than five occasions in any breeding season. The Syndicate Manager shall have no obligation to sell or otherwise dispose of any Nomination, whether in a normal, reduced or excess book, by or on behalf of the syndicate or any Owner.

3.5. Breeding Soundness. LEMON DROP KID shall not be bred at any time or under any circumstances or condition when to do so would be injurious to his health, fertility or future breeding capacity and the determination of the Syndicate Manager, with the advice of the attending veterinarian, shall be final and binding. Each mare offered for breeding shall be in sound condition and free from infection and disease as determined by the Syndicate Manager or the attending veterinarian.

3.6. Reduced Book. In the event the Syndicate Manager shall determine that LEMON DROP KID cannot be bred safely to a normal book of mares during any breeding season, the order in which the Owners and the Syndicate Manager shall be entitled to receive available Nominations shall be determined by lot if such determination is made prior to the commencement of a breeding season. If such determination is made after commencement of a breeding season, the Syndicate Manager may make such allocation of Nominations and proceeds for such breeding season and future breeding seasons as the Syndicate Manager shall determine to be fair and equitable under the circumstances so that the Owners and the Syndicate Manager may have approximately the same proportionate potential benefit as in a normal book.

- 4

3.7. Excess Book. Should the Syndicate Manager determine, after consultation and advice from the attending veterinarian, that LEMON DROP KID may be bred safely to mares in excess of the normal book, the Syndicate Manager shall determine the number of mares to which LEMON DROP KID may be bred. Each year after the first year that LEMON DROP KID shall stand at stud, the Syndicate Manager shall notify the Owners if nominations in an excess book for a breeding season are expected to be allocated to the Owners and the number of Nominations expected to be allocated. The Owners shall be entitled either to an allocation of bonus Nominations, which allocation shall be made by lot with one draw for each Nomination in a normal book, or to a pro rata share of the proceeds from the sale by the Syndicate Manager of bonus Nominations, as determined by the Syndicate Manager. The plan of the Syndicate Manager for the use or disposition of Nominations in an excess book shall be made in consultation with one or more of the Owners. The Syndicate Manager may at any time cancel or defer any portion of an excess book for any year in which the Syndicate Manager should determine such action to be in the best interests of LEMON DROP KID.

## 4. SYNDICATE MANAGER

4.1. Location; Successor. LEMON DROP KID shall stand at Lane's End Farm, Woodford County, Kentucky, under the supervision and management of Lane's End Stallions, Inc., as Syndicate Manager. The Syndicate Manager may be removed or LEMON DROP KID moved to stand outside Kentucky only with the affirmative vote of the Owners of thirty-four (34) Fractional Interests; provided, however, that in no event shall LEMON DROP KID be moved to stand outside the continental United States without the affirmative vote of all forty (40) Fractional Interests. The Syndicate Manager may resign upon 60 days written notice to the Owners, provided that such resignation shall not become effective during the period commencing on February 1 and ending on July 15 of any year. Upon the resignation or removal of the Syndicate Manager, a successor may be elected by majority vote of the Fractional Interests.

4.2. Authority. The Syndicate Manager shall have the general supervision and management of LEMON DROP KID, including supervision and control of all breeding activities. The Syndicate Manager shall select and employ a veterinarian to attend LEMON DROP KID, shall determine when, on a fair and equitable basis, the mares to be serviced shall be so serviced and whether the mares and LEMON DROP KID are in suitable condition for breeding, shall keep, or cause to be kept, such records as are appropriate and shall select such attorneys and accountants as may be required in the administration hereof. The Syndicate Manager shall expend on behalf of the syndicate such sums as may be appropriate for the promotion and advertising of LEMON DROP KID. The Syndicate Manager shall nominate LEMON DROP KID as a stallion standing in North America to the program established by Breeders' Cup Limited and shall determine the price and terms of sale of the Nomination, the proceeds of which are to be used to defray the costs of nomination to such program, and of all other Nominations to be sold by the Syndicate Manager and determine any contribution to be made to the NTRA as provided in paragraph 3.3. The Syndicate Manager shall be entitled to determine the dates for the commencement and ending of each breeding season to start not earlier than February 1 and to end not later than July 31 of each year.

. 5

4.3.  Standard of Care.  The Syndicate Manager shall employ the degree of care customarily employed in Kentucky by persons who keep and breed Thoroughbred stallions.  The Syndicate Manager shall not be liable for loss of or theft of LEMON DROP KID to anyone other than an Owner who does not have in force mortality insurance or for injury to LEMON DROP KID to anyone other than an Owner who does not have in force insurance covering such injury; and in any case, provided such Owner establishes by clear and convincing evidence that such degree of care has not been employed, and any such liability shall in no event exceed the amount paid the Initial Owner for the Fractional Interest upon the first sale reduced by twenty-five percent for each breeding season LEMON DROP KID shall have stood at stud.  The Syndicate Manager shall not be responsible for any injury, disease or death of any mare resulting from breeding or attempting to breed to LEMON DROP KID.  The Syndicate Manager shall have no obligation or responsibility to verify the identity of any mare presented for breeding, such responsibility being solely that of each Owner or his respective assigns.

4.4.  Public Liability.  The Syndicate Manager shall keep and maintain a policy of public liability insurance in a reasonable amount insuring against loss or liability to any persons by reason of negligence of the Syndicate Manager, his agents, servants and employees, in the keep, maintenance, and standing of LEMON DROP KID.

4.5.  Records; Reports.  The Syndicate Manager shall keep books and records of account which shall accurately reflect all receipts and disbursements for and on behalf of the Owners.  The Syndicate Manager shall furnish to each Owner a statement reflecting the receipts and disbursements by and on behalf of the syndicate, which statement shall be included with each quarterly statement for expenses.  The Syndicate Manager shall furnish to each Owner, as soon as practical after the end of each breeding season, a statement showing the results of the breeding season.  The Syndicate Manager shall make available for inspection at its offices in Woodford County, Kentucky or at the premises where LEMON DROP KID is kept on any business day between the hours of 10:00 a.m. and 4:00 p.m., local time, the books and records of this syndicate to any Owner who so requests by seventy-two (72) hours written notice.

4.6.  Registration of Ownership.  The Syndicate Manager shall maintain syndicate records indicating ownership of each Fractional Interest.  Upon receipt of written evidence of transfer of ownership of a Fractional Interest and such other evidence as the Syndicate Manager shall reasonably request, which shall include the agreement of the transferee to be bound by all the terms of this Agreement and which may be on forms specified by the Syndicate Manager, the Syndicate Manager shall transfer ownership on the syndicate records.  The Syndicate Manager may refuse to make any such transfer if the Syndicate Manager has been notified that the Fractional Interest is subject to a security interest unless the Syndicate Manager is also furnished evidence that the transfer does not violate the terms of the security agreement creating such security interest.  Upon request, the Syndicate Manager shall provide a certificate to any Owner or any insurance, bank, or trust company specified by such Owner, to the effect that the Owner is the registered Owner of a Fractional Interest and specifying the number of such Fractional Interest.

- 6

4.7. Jockey Club Documentation. The Syndicate Manager shall maintain all records required by The Jockey Club relating to stallions and shall promptly submit to The Jockey Club all required reports as they become due. The Syndicate Manager shall also cause to be issued, in form acceptable to The Jockey Club, certificates required for the registration of foals out of mares bred to LEMON DROP KID to Owners or assignees who have satisfied all conditions for issuance and delivery thereof.

4.8. Allocation of Monies. The Syndicate Manager shall bill each Owner quarterly for the Owner's proportionate amount of stallion keep and other expenses incurred as herein provided. The Syndicate Manager shall allocate to the account of each Owner such Owner's proportionate share of (i) any receipts from the sale by the Syndicate Manager of Nominations on behalf of the syndicate in a bonus book, and (ii) any stallion awards attributable to LEMON DROP KID from Breeders' Cup Limited or any other stallion awards program. In the event of transfer of a Fractional Interest, such allocation shall be made to the Owner of record of the Fractional Interest during the majority of the applicable season in the case of any such receipts from the sale of Nominations and in the case of any awards to the Owner of record on the last day of the calendar quarter in which such receipt shall occur. The Syndicate Manager may deduct the amount of expenses expected to be incurred hereunder during the twelve calendar months following the receipt by the Syndicate Manager of such allocated amounts prior to distributing monies to the Owners.

4.9. Defaults. The Syndicate Manager shall have an agister's lien upon and a security interest in any Fractional Interest as to which any portion of the amounts billable to Owners hereunder and so billed have not been paid. The Syndicate Manager may assess a service charge of two percent (2%) per month, payable monthly, upon any amounts billed to an Owner which remain unpaid for ten days. The Syndicate Manager shall be entitled to commence legal action upon 30 days prior written notice to an Owner, the date of such notice being the date upon which the cause of action for nonpayment shall be deemed to occur. In the event the default shall continue for a period of 12 months, commencing on the last day of the first quarter for which the Owner shall be in arrears, the Syndicate Manager shall be entitled to sell the Fractional Interest, as agent and attorney-in-fact, for the Owner who is so in default. In addition, the Syndicate Manager may withhold stallion service certificates and may refuse to permit a mare to be bred on any season attributable to a Fractional Interest, the Owner of which is (a) more than two calendar quarters in arrears on amounts payable by such Owner; or (b) is in default of an installment of principal or interest on the purchase price to the Initial Owner; or (c) who fails to furnish evidence, acceptable to the Syndicate Manager, either (i) that the use of any Nomination by the Owner or his assignee is not subject to any sales and use taxes or other taxes imposed by the Commonwealth of Kentucky or other jurisdiction, or (ii) that all such taxes have been paid.

4.10. Compensation. As full compensation for its services in each breeding season that LEMON DROP KID stands at stud under its supervision, the Syndicate Manager shall receive stallion keep and, subject to Section 3.6, five free Nominations, all as provided herein. Commencing January first in each calendar year, the Syndicate Manager may sell, transfer, assign or otherwise dispose of its Nominations for the ensuing breeding season, but any other attempted sale, transfer,

- 7

assignment or other disposition by the Syndicate Manager of its future Nominations shall be voidable and not binding upon the Owners.

4.11. Powers of Attorney. Each Owner authorizes and empowers the Syndicate Manager, and constitutes and appoints the Syndicate Manager as his agent and attorney-in-fact, (a) to execute and deliver and generally to do and file on behalf of such Owner such things us the Syndicate Manager shall deem necessary or appropriate with The Jockey Club and (b) to execute such elections as may be required by the taxing authorities of the United States and as may be herein provided.

4.12. Other Activities. The Syndicate Manager shall not be required to devote himself exclusively to his duties hereunder and the Syndicate Manager shall be expressly permitted to conduct any other business activities and to accept any other engagements, including, without limitation, the management of other stallions, the purchase, sale, racing and breeding of Thoroughbreds, or any one or more of them.

4.13. Control. Certain insurance policy provisions purchased by the Owners may provide that the insurance carriers shall have the right to exercise sole and absolute discretion concerning the control of LEMON DROP KID (including control of the treatment, location, use, retention and/or disposal of LEMON DROP KID) in the event of potential infertility or sickness of, or accident to, LEMON DROP KID. The Syndicate Manager shall be required to abide by such provisions, and the Owners shall be bound by such provisions with respect to the insurance obtained by the Syndicate Manager pursuant to Section 6.5. The Syndicate Manager shall not be bound by, and shall have no obligation or liability from failing to abide by, any such provisions in policies issued otherwise, but the Syndicate Manager may in its sole and absolute discretion, nevertheless allow the insurance carriers to exercise such policy provisions relating to control. The Syndicate Manager shall have no liability for or obligation with respect to any action taken by any insurance carriers or their representatives. Nothing in this paragraph shall be construed to divest any Owner of his Fractional Interest other than an Owner covered by the insurance obtained by the Syndicate Manager.

5. TRANSFERS
5.1. Auctions. No Fractional Interest and no Nomination may be offered for sale at an auction sale without the prior written consent of the Syndicate Manager which it may withhold in its discretion. For purposes of this Agreement, an auction sale shall include all auctions (whether public, private or otherwise) and similar sales at which items are sold to the highest bidder, whether or not an auctioneer is present and whether the bidders are present or participate through telecommunications or make written bids. For purposes of settling an estate, the Syndicate Manager may, in his sole discretion, grant permission for an estate to sell one Fractional Interest at public auction in any one calendar month   With respect to the auction sale, when permitted, of Nominations and Fractional Interests, only one Nomination and only one Fractional Interest may be offered for sale by any one sales company (including all affiliates thereof) during any calendar month. Any Owner desiring to sell a Nomination or Fractional Interest at auction shall notify the Syndicate Manager of the time, date and place of auction at least 45 days prior to the sale and shall designate the particular Fractional Interest or Nomination to be sold. Only Owners so notifying the

- 8

Syndicate Manager shall be entitled to be considered in the event a sale at the auction is approved. Should the Syndicate Manager approve sales at the particular auction and should the Syndicate Manager receive notice with respect to more than one Fractional Interest or Nomination, the Syndicate Manager shall determine by lot which Fractional Interest and which Nomination may and which may not be sold at the approved auction sale. The Syndicate Manager shall notify the Owners of auction sales at which Fractional Interests are to be offered.

5.2. Nominations. Subject to the provisions of the preceding paragraph, Nominations may be sold, exchanged or otherwise transferred or assigned, provided that (a) Nominations may not be accumulated from one breeding season to another, (b) written notice of such transfer must be given to the Syndicate Manager within ten days of sale, and (c) any sale or transfer by an Owner who has not made payment in full of indebtedness secured by his Fractional Interest and payable to the Initial Owner, the Initial Purchaser, or the Syndicate Manager is subject to the conditions set forth in the security agreement creating the security interest. In the event the Syndicate Manager shall have been notified that a Fractional Interest is subject to a security interest, the Syndicate Manager may, but shall not be required to, refuse to record the transfer of any Nomination without the written approval of the person holding the security interest.

5.3. Fractional Interests; Right of First Refusal. (a) The sale or other transfer of a Fractional Interest by the Initial Owner, the Initial Purchaser, or the Syndicate Manager, as well as the repossession and resale of a Fractional Interest repossessed by any of them, shall be free of any right of first refusal on the part of any person, but any subsequent sale by the successor in interest of any such Owner or any other person shall be subject to the first right to purchase described in the following subsections (b) and (c).

(b) Except as specifically permitted by this Section 5.3, no Fractional Interest in LEMON DROP KID shall be transferred without offering the other Owners the first right to purchase any Fractional Interest or Interests which an Owner may desire to sell.

(c) Except as provided in Section 5.3(a) hereof, any Owner who receives an offer to transfer a Fractional Interest or Interests which he is willing to accept shall notify the Syndicate Manager in writing, stating the name of the proposed transferee, the terms of the offer and, in the event of an offer to exchange, the identity and quotation of the then prevailing fair market value of the fractional interests to be exchanged. The Syndicate Manager, immediately upon receipt of such notice, shall notify all other Owners of the name of the proposed transferee and the terms of the offer, which notice shall constitute an offer to each Owner to exercise the first right to purchase such Fractional Interest or Interests on the same terms. Any Owner desiring to accept said offer shall, within seven business days of the sending of such notice by the Syndicate Manager, so notify the Syndicate Manager in writing. In the event that more than one eligible person desires to accept the offer, then the person who shall be entitled to purchase shall be determined by the Syndicate Manager by lot. The electing Owner entitled to purchase the Fractional Interest shall be required to purchase the same at 4:00 p.m. on the first business day following the determination by the Syndicate Manager if, and only if, at such time LEMON DROP KID is in good general health, at which point risk of loss shall

- 9

pass.  Within ten business days after receipt of the original notice specifying the terms of the
proposed sale, the Syndicate Manager shall notify the selling Owner of a Fractional Interest in
writing of the acceptance or rejection of the offer and, if such offer is not accepted, or in the absence
of such notice in writing, the Owner desiring to sell may then sell the Fractional Interest or Interests
to the person making the offer upon the terms stated, subject, however, to all the terms and
conditions of this Agreement.  If the sale is not closed within thirty (30) days, however, the
Fractional Interest must again be offered to the Owners as set out above before any further sale.  In
the event the original notice given by the Owner desiring to sell shall specify that more than one
Fractional Interest is to be sold, any other Owner may elect to purchase only one Fractional Interest.

        (d)  Fractional Interests may (i) pass by inheritance or will, (ii) be transferred by gift or sale
to a member of the Owner's immediate family, or (iii) be transferred to or from any firm, partnership,
revocable or irrevocable trust,  or other entity controlled by the Owner and his immediate family or
any of them, all without being subject to the first right to purchase; provided, however, that in each
case the Syndicate Manager shall be furnished with affidavits or other information acceptable to it
that any proposed transfer is not subject to the first right to purchase.

        5.4.  Expenses; Taxes.  All expenses incurred by the Syndicate Manager in connection with
the offer outlined above shall be paid by the selling Owner.  In the event an Owner shall attempt to
transfer a Fractional Interest at a time when syndicate expenses have been incurred and the Owner
has not then paid his proportionate share of such expenses, the transferee of such Fractional Interest
shall assume and shall be required to pay as a condition of assuming all rights of ownership of such
Fractional Interest, all outstanding expenses of the syndicate attributable to the Fractional Interest
being acquired.  Each Owner shall be responsible for all sales, use and other taxes payable in
connection with the use, sale or transfer of his Fractional Interest and Nominations attributable
thereto.  Each Owner shall either deposit with the Syndicate Manager the amount of all such taxes
for remittance to the appropriate taxing authority or furnish to the Syndicate Manager such evidence
of payment of, or exemption from, all such taxes as the Syndicate Manager shall reasonably request.

        5.5.  Effectiveness.  No transfer or attempted transfer of a Nomination or of a Fractional
interest by an Owner or assigns shall be effective as to the Syndicate Manager or the other Owners
until such transfer shall have been recorded by the Syndicate Manager on the books and records
maintained by the Syndicate Manager.

6. OPERATION OF THE SYNDICATE; MISCELLANEOUS
        6.1.  Meetings.  The Syndicate Manager, the Initial Owner, or the Owners of 18 or more
Fractional Interests may call a meeting of Owners upon not less than 10 days written notice, to be
held within Woodford County or Fayette County, Kentucky.  The notice must state the date, time,
place and purpose of the meeting.  Each Owner shall be entitled to one vote for each Fractional
Interest owned by him which may be cast in person or by agent or proxy, duly authorized in writing,
an original of which shall be presented at the meeting for inspection.  No subject matter shall be
considered at any meeting unless notice thereof is included in the notice of such meeting.  Except
as otherwise provided herein, a majority vote shall decide all questions properly submitted, provided

a majority of all Fractional Interests is present in person or represented by proxy at such meeting. Any action which may be taken at a meeting may be taken without a meeting if Owners of the required number of Fractional Interests vote by written instrument so to do.

6.2.  Proportionate.  "Proportionate" when used herein with respect to any Owner shall mean the percentage determined by dividing the number of Fractional Interests owned by such Owner by the total number of Fractional Interests (i.e., 40).

6.3.  By Lot.  In those instances where a determination is to be made by lot, the Syndicate Manager shall either notify the Owners that drawings will be held at a designated time and place within Woodford County or Fayette County or that all drawings will be held by an accounting firm or attorney pursuant to written instructions from the Syndicate Manager.  Each Owner participating shall be entitled to a number of lots equal to the number of Fractional Interests owned by such Owner.  In the case of a reduced book the Syndicate Manager shall be entitled to a number of lots equal to its respective number of Nominations in the normal book.  In the case of a determination by lot of those entitled to participate in an excess book or a reduced book, once a lot shall have been drawn, it shall not be included in subsequent drawings for the current or future breeding seasons until all other lots shall have been drawn, at which time the procedure may be repeated.

6.4.  Tax Election.  It is not the purpose or intention of this Agreement to create, and this Agreement shall not be considered as creating a joint venture, partnership or other relationship whereby any party shall be held liable for the omissions or commissions of any other party; but, if for federal tax purposes this Agreement or the relationship established hereby and the operations hereunder are regarded as a partnership as that term is defined in the Internal Revenue Code of 1986, then the Owners hereby elect not to be treated as a partnership and to be excluded from the application of all provisions of Subchapter K, Chapter 1, subtitle A of such Code.  In making this election, each and every Owner acknowledges that the income derived from him by reason of his ownership of a Fractional Interest can be adequately determined without the necessity for any computation of partnership taxable income, and all such Owners agree not to give notices or take any other action inconsistent with the election hereby made.  In the event that for whatever reason, the Internal Revenue Service shall require that computations be made pursuant to Subchapter K, the Initial Owner and each other Owner elect, and as a condition of remaining an Owner agree, (a) to have depreciation determined pursuant to Section 704(c)(3) as though undivided interests had been contributed by each Owner and, in the case of a transfer of a Fractional Interest to have the basis of LEMON DROP KID adjusted in accordance with the provisions of Section 743 of the Internal Revenue Code of 1986, and authorize the Syndicate Manager to file such election in accordance with Section 754 of such Code, (b) to have each other item of expense allocated as provided in this Agreement and (c) to have each item of income, in the case of a Nomination, allocated to the Owner entitled to use the same, and in the case of cash, allocated to the Owner to whom paid or credited.

6.5.  Insurance Availability.  No Owner may separately insure against the infertility (congenital or as the result of accident, sickness, or disease) of LEMON DROP KID prior to December 1, 2001, without the consent of the Syndicate Manager in its sole discretion.  The

11

Syndicate Manager shall use its best efforts to obtain a single policy against such risks and each Owner electing coverage shall be entitled to a pro rata portion of the single policy to be obtained by the Syndicate Manager. After December 1, 2001, each Owner may separately obtain any insurance to the extent of his insurable interest.

6.6.  Breach; Venue.  No action for the breach of any provision of this Agreement or in connection with LEMON DROP KID or the operation hereof may be commenced more than one year after the event giving rise to such cause of action shall have occurred. Each Owner agrees to hold harmless each other Owner and the syndicate created hereby from any costs, expenses and liabilities resulting from a breach or alleged breach of one or more representations or warranties made in connection with the sale or transfer of a Fractional Interest by such Owner. Venue for any action brought hereunder or otherwise in connection with LEMON DROP KID shall be in Versailles, Woodford County, Kentucky, or United States District Court, Lexington, Kentucky, and such action may be commenced by service by mail to the last address shown on the syndicate books maintained by the Syndicate Manager or by any other method permitted by law.

6.7.  Headings; Separability.  Article, section and paragraph headings and the table of contents are for convenience only and shall not affect the construction hereof. In case any provision shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired.

6.8.  Termination; Modification.  This Agreement and the Syndicate created hereunder may be altered, amended or modified with the affirmative vote of the Owners holding 34 of the 40 Fractional Interests or such greater number as may be required by the terms hereof, as, for example, in the case of paragraph 4.1 with respect to moving LEMON DROP KID outside the United States. If not sooner terminated, the Syndicate will terminate automatically on December 31, 2050.

6.9.  Notices.  Notices required hereunder to be given to the Owners shall be effective and binding if sent by prepaid United States mail, telegram, mailgram, facsimile, cablegram, delivery service, or delivered in person to the address of the respective Owner, as the address is shown on the syndicate records maintained by the Syndicate Manager, and notices to the Syndicate Manager shall only be effective and binding upon the actual and timely receipt thereof by the Syndicate Manager.

6.10.  Binding Effect.  This Agreement and each and every provision hereof shall be binding upon and shall inure to the benefit of the parties to this Agreement, and all other persons who acquire a Fractional Interest or the right thereto, the respective partners thereof where any such party or person is a partnership, and their respective heirs, personal representatives, administrators, successors, assigns and transferees, whether with or without consideration.

6.11.  Controlling Law.  This Agreement, as well as all the instruments executed with respect to or pertaining to any right or interest created hereunder, shall be governed by and construed in accordance with the prevailing law of the Commonwealth of Kentucky.

· 12

6.12. Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same Agreement.

IN WITNESS WHEREOF each of the parties has signed, or caused to be signed on its behalf, this Agreement all as of the day and year first written above.

_____
Jeanne Vance

_____
W. S. Farish

LANE'S END STALLIONS, INC

BY_____
        President

C0028

# EXHIBIT B

C0029

KINGMAMBO SYNDICATE AGREEMENT, made and entered into as of December 10, 1993, by and between Flaxman Holdings Limited, 6100 Mt. Horeb Pike, Lexington, Kentucky 40511 (hereinafter sometimes called "Flaxman"), W. S. Farish, 1100 Louisiana Street, Suite 1200, Houston, Texas 77002 ("Farish" and Farish and Flaxman being sometimes called individually an "Initial Owner" and collectively, the "Initial Owners") and Lane's End Stallions, Inc., a Texas corporation, P. O. Box 626, Versailles, Kentucky 40383 (the "Syndicate Manager").

The Initial Owners own, or have the right to own, outright the Thoroughbred KINGMAMBO (c. 1990) by MR. PROSPECTOR out of MIESQUE by NUREYEV ("KINGMAMBO") and desire to transfer ownership of KINGMAMBO into syndicate form and to provide for the management and supervision of KINGMAMBO. Accordingly the parties agree as follows:

1.   OWNERSHIP

    1.1.   Effective Time; Fractional Interests.
    This Agreement shall become effective and the syndicate created hereby shall come into existence at the later of (a) the time that this Agreement is executed by or on behalf the Initial Owners and the Syndicate Manager and (b) KINGMAMBO shall have cleared quarantine in the United States. At such time of syndication, ownership of KINGMAMBO shall be divided into and represented by forty-two (42) equal fractional ownership interests ("Fractional Interests"), which Fractional Interests are numbered 1 through 42. Fractional Interests numbered 1 through 30 shall be initially vested in Farish and Fractional Interests numbered 31 through 42 shall be initially vested in Flaxman. Fractional Interests shall be evidenced by a copy of this Syndicate Agreement, attached to and made a part of a Certificate to be issued by the Syndicate Manager. A Fractional Interest shall be transferable as provided herein, shall otherwise be entitled to equal rights and privileges and subject to equal duties and obligations with every other Fractional Interest, and shall be subject to all of the terms and conditions of this Agreement. The owner of a Fractional Interest, including the Initial Owners, is hereinafter called an "Owner". Ownership of each Fractional Interest and transfers thereof shall be recorded in syndicate books to be kept and maintained by the Syndicate Manager.

    1.2.   Expenses.
    Each Owner shall be obligated to pay his proportionate share of (a) the costs and expenses incurred in connection with the breeding, maintenance, and care of KINGMAMBO, (b) the prevailing rate for stallion keep, and (c) the nomination fees

MCH

KINGMAMBO                                                    Page 2

and other expenses incident to operation of the syndicate as
herein provided.

    1.3.  Obligations.
    On or before September 1 of each breeding season, each Owner
shall, or shall cause his nominee to, notify the Syndicate
Manager of the final pregnancy status of each mare bred on a
Nomination allocable to his Fractional Interest.

    1.4.  Joint Ownership.
    Each Fractional Interest shall be indivisible, but may be
owned jointly by two or more parties provided all parties and
their respective interests shall have been identified to the
Syndicate Manager at the time ownership is acquired. The Owners
and the Syndicate Manager shall be entitled to deal with and to
accept and rely upon and act upon any information, instructions
or facts represented by any one of such parties. If a Fractional
Interest is held by a corporation, partnership or similar entity,
the Owners and the Syndicate Manager shall be entitled to deal
with and accept and rely upon any information, instructions or
facts represented by any officer of the corporation or general
partner of a partnership. Only a full Fractional Interest shall
have any rights hereunder.

    1.5.  Relationships.
    The Owners agree that (a) their relationship shall be that of
tenants in common of a chattel possession of which shall be as
provided herein, and (b) the relationship of the Owners to the
Syndicate Manager shall be that of principal and agent, with the
agency of the Syndicate Manager being one that is coupled with an
interest in KINGMAMBO. The Owners waive any right which they
may otherwise have to demand the partition, or sale for
partition, of KINGMAMBO and agree that the sole and adequate
means by which any Owner may divest himself of his interest in
KINGMAMBO shall be by the transfer of his Fractional
Interest.

2.  INITIAL OWNERS

    2.1.  Representations.
    The Initial Owners represent and warrant that at the time of
syndication (a) they will own KINGMAMBO free and clear of all
liens and encumbrances whatsoever, (b) they will have good right
and full power and authority to execute, deliver and perform this
Agreement and to transfer ownership of KINGMAMBO into
syndicate form as herein provided, (c) any and all Fractional
Interests sold by the Initial Owners will be sold subject to the

MCH

KINGMAMBO                                                    Page 3

terms of this Agreement and (d) no one has any right, claim or interest in or to KINGMAMBO except as provided herein. **THE INITIAL OWNERS MAKE NO REPRESENTATIONS OR WARRANTIES EXCEPT SUCH AS ARE SPECIFICALLY SET FORTH HEREIN AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR AS TO THE FITNESS OF KINGMAMBO OR HIS SEMEN FOR ANY PARTICULAR PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.**

2.2.  Evidence of Syndication.
The Jockey Club certificate for **KINGMAMBO** shall be endorsed by the Initial Owners to the syndicate created hereby and delivered in accordance with the instructions of the Syndicate Manager.

3.  BREEDING

3.1.  Nominations.
During each breeding season that **KINGMAMBO** stands at stud, each Owner shall be entitled to one Nomination (as hereinafter defined), subject to the provisions governing a reduced book.

3.2.  First Breeding Season.
During the first breeding season that **KINGMAMBO** stands at stud, the Syndicate Manager, in its sole discretion, may refuse to permit any mare barren in both of the two preceding years or which is 17 years of age or older to be bred to **KINGMAMBO**. During such first breeding season, each mare nominated or offered for breeding to **KINGMAMBO** must be certified in writing by a qualified veterinarian to be clean and sound for breeding and the owner thereof must have agreed, at his own expense, to have a veterinarian examine such mare for pregnancy within 45 days after breeding and to send the report of such examination to the Syndicate Manager.

3.3.  Normal Book.
For each breeding season, each Owner shall be entitled to one Nomination, the Syndicate Manager shall be entitled to four Nominations, Flaxman Holdings Limited shall be entitled to two Nominations, Cashmark Farms, Inc. shall be entitled to one Nomination, Freddy Head ("Head") shall be entitled to one Nomination, and one Nomination may be offered for sale and sold by the Syndicate Manager to defray the costs of nominating KINGMAMBO to the program of The Breeders' Cup Limited. All such Nominations are collectively called the "normal book". The Nominations of the Syndicate Manager are transferable only for each breeding season in which it acts in such capacity. The Nominations of Flaxman, Cashmark, and Head described in this Section are attributable to Lifetime Breeding Rights in KINGMAMBO herein reserved for the benefit of Flaxman, Cashmark, and Head, and their respective successors in interest.

MCH

Exhibit A
Page 26 of 54

KINGMAMBO                                                        Page 4

Such Nominations and Lifetime Breeding Rights of Flaxman,
Cashmark, and Head are transferable over the life of
KINGMAMBO, or any shorter period, without restriction except
for the restriction on auction sales set forth in Section 5.1.
Each of said Lifetime Breeding Rights is the right to breed in
each breeding season one Thoroughbred mare to KINGMAMBO for
the life of KINGMAMBO, wheresoever he shall stand at stud.
Each of said Lifetime Breeding Rights is severable from the
others, freely transferable by the holder thereof and constitutes
a reserved interest in KINGMAMBO.  The holder of each of said
Lifetime Breeding Rights shall have no obligation to pay any of
the expenses of the syndicate and shall have no vote in syndicate
matters.  No amendment to this Syndicate Agreement, nor any sale
of KINGMAMBO by the Owners shall affect the rights herein
reserved to the holders of said Lifetime Breeding Rights.

    3.4.  Nomination.
    A  "Nomination" is the right to breed one Thoroughbred mare to
KINGMAMBO in a breeding season.  Once a Nomination has first
been used in any one breeding season for a mare to be covered by
KINGMAMBO, no other mare may be substituted for breeding in
that breeding season unless the Syndicate Manager, in its sole
discretion, approves substitution for a mare certified to be dead
or certified by a veterinarian to be both barren and unsound for
breeding for the remainder of the breeding season.  Each
Nomination shall be noncumulative from one breeding season to
another and without right of return in any subsequent breeding
season for any reason whatsoever. Any Nomination which is not
used or availed of in any one breeding season, except in the
event of a reduced book as set forth below, shall not be carried
over into another breeding season, but shall be lost.  Without
the consent of the Syndicate Manager, no mare may be covered on
more than five occasions in any breeding season.  The Syndicate
Manager shall have no obligation to sell or otherwise dispose of
any Nomination, whether in a normal, reduced or excess book, by
or on behalf of the syndicate or any Owner.

    3.5.  Breeding Soundness.
    KINGMAMBO shall not be bred at any time or under any
circumstances or condition when to do so would be injurious to
his health, fertility or future breeding capacity and the
determination of the Syndicate Manager, with the advice of the
attending veterinarian, shall be final and binding.  Each mare
offered for breeding shall be in sound condition and free from
infection and disease as determined by the Syndicate Manager or
the attending veterinarian.

    3.6.  Reduced Book.
    In the event the Syndicate Manager shall determine that
KINGMAMBO cannot be bred safely to a normal book of mares
during any breeding season, the order in which the Owners, the

yut

KINGMAMBO                                                         Page 5

Syndicate Manager, and the holders of Lifetime Breeding Rights
(Flaxman, Cashmark, and Head) shall be entitled to receive
available Nominations shall be determined by lot if such
determination is made prior to the commencement of a breeding
season. If such determination is made after commencement of a
breeding season, the Syndicate Manager may make such allocation
of Nominations and proceeds for such breeding season and future
breeding seasons as the Syndicate Manager shall determine to be
fair and equitable under the circumstances so that the Owners,
the Syndicate Manager, and the holders of the Lifetime Breeding
Rights (Flaxman, Cashmark, and Head) may have approximately the
same proportionate potential benefit as in a normal book.

3.7.  Excess Book.
Should the Syndicate Manager determine, after consultation
and advice from the attending veterinarian, that KINGMAMBO
may be bred safely to mares in excess of the normal book, the
Syndicate Manager shall determine the number of mares to which
KINGMAMBO may be bred. On or prior to October 1 each year
commencing with October 1 of the first calendar year that
KINGMAMBO shall stand at stud, the Syndicate Manager shall
notify the Owners if there will be an excess book for the
following breeding season and the number of Nominations expected
to be in the excess book. The Owners shall be entitled either to
an allocation of bonus Nominations, which allocation shall be
made by lot with one draw for each Nomination in a normal book,
or to a pro rata share of the proceeds from the sale by the
Syndicate Manager of bonus Nominations, as determined by the
Syndicate Manager. The plan of the Syndicate Manager for the use
or disposition of Nominations in an excess book shall be made in
consultation with one or more of the Owners. The Syndicate
Manager may at any time cancel or defer any portion of an excess
book for any year in which the Syndicate Manager should determine
such action to be in the best interests of KINGMAMBO.

4.  SYNDICATE MANAGER

4.1.  Location; Successor.
KINGMAMBO shall stand at Lane's End Farm, Woodford
County, Kentucky, under the supervision and management of Lane's
End Stallions, Inc., as Syndicate Manager. The Syndicate Manager
may be removed or KINGMAMBO moved to stand outside Kentucky
only with the affirmative vote of the Owners of thirty-four (34)
Fractional Interests. The Syndicate Manager may resign upon 60
days written notice to the Owners, provided that such resignation
shall not become effective during the period commencing on
February 1 and ending on July 15 of any year. Upon the
resignation or removal of the Syndicate Manager, a successor may
be elected by majority vote of the Fractional Interests.

MC+

KINGMAMBO                                                    Page 6

    4.2.   Authority.
    The Syndicate Manager shall have the general supervision and
management of KINGMAMBO, including supervision and control of
all breeding activities.  The Syndicate Manager shall select and
employ a veterinarian to attend KINGMAMBO, shall determine
when, on a fair and equitable basis, the mares to be serviced
shall be so serviced and whether the mares and KINGMAMBO are
in suitable condition for breeding, shall keep, or cause to be
kept, such records as are appropriate and shall select such
attorneys and accountants as may be required in the
administration hereof.  The Syndicate Manager shall expend on
behalf of the syndicate such sums as may be appropriate for the
promotion and advertising of KINGMAMBO.  The Syndicate
Manager shall nominate KINGMAMBO as a stallion standing in
North America to the program established by The Breeders' Cup
Limited and shall determine the price and terms of sale of the
Nomination, the proceeds of which are to be used to defray the
costs of nomination to such program, and of all other Nominations
to be sold by the Syndicate Manager.  The Syndicate Manager shall
be entitled to determine the dates for the commencement and
ending of each breeding season.

    4.3.   Standard of Care.
    The Syndicate Manager shall employ the degree of care
customarily employed in Kentucky by persons who keep and breed
Thoroughbred stallions.  The Syndicate Manager shall not be
liable for loss of or theft of KINGMAMBO to anyone other than
an Owner who does not have in force mortality insurance or for
injury to KINGMAMBO to anyone other than an Owner who does
not have in force insurance covering such injury; and in any
case, provided such Owner establishes by clear and convincing
evidence that such degree of care has not been employed, and any
such liability shall in no event exceed the amount paid the
Initial Owner for the Fractional Interest upon the first sale
reduced by twenty-five percent for each breeding season
KINGMAMBO shall have stood at stud.  The Syndicate Manager
shall not be responsible for any injury, disease or death of any
mare resulting from breeding or attempting to breed to
KINGMAMBO.  The Syndicate Manager shall have no obligation or
responsibility to verify the identity of any mare presented for
breeding, such responsibility being solely that of each Owner or
his respective assigns.

    4.4.   Public Liability.
    The Syndicate Manager shall keep and maintain a policy of
public liability insurance in a reasonable amount insuring
against loss or liability to any persons by reason of negligence
of the Syndicate Manager, his agents, servants and employees, in
the keep, maintenance, and standing of KINGMAMBO.

                                                        MGH

C0035

### 4.5. Records; Reports.

The Syndicate Manager shall keep books and records of account which shall accurately reflect all receipts and disbursements for and on behalf of the Owners. The Syndicate Manager shall furnish to each Owner a statement reflecting the receipts and disbursements by and on behalf of the syndicate, which statement shall be included with each quarterly statement for expenses. The Syndicate Manager shall furnish to each Owner, as soon as practical after the end of each breeding season, a statement showing the results of the breeding season. The Syndicate Manager shall make available for inspection at its offices in Woodford County, Kentucky or at the premises where KINGMAMBO is kept on any business day between the hours of 10:00 a.m. and 4:00 p.m., local time, the books and records of this syndicate to any Owner who so requests by seventy-two (72) hours written notice.

### 4.6. Registration of Ownership.

The Syndicate Manager shall maintain syndicate records indicating ownership of each Fractional Interest. Upon receipt of written evidence of transfer of ownership of a Fractional Interest and such other evidence as the Syndicate Manager shall reasonably request, which shall include the agreement of the transferee to be bound by all the terms of this Agreement and which may be on forms specified by the Syndicate Manager, the Syndicate Manager shall transfer ownership on the syndicate records. The Syndicate Manager may refuse to make any such transfer if the Syndicate Manager has been notified that the Fractional Interest is subject to a security interest unless the Syndicate Manager is also furnished evidence that the transfer does not violate the terms of the security agreement creating such security interest. Upon request, the Syndicate Manager shall provide a certificate to any Owner or any insurance, bank, or trust company specified by such Owner, to the effect that the Owner is the registered Owner of a Fractional Interest and specifying the number of such Fractional Interest.

### 4.7. Jockey Club Documentation.

The Syndicate Manager shall maintain all records required by The Jockey Club relating to stallions and shall promptly submit to The Jockey Club all required reports as they become due. The Syndicate Manager shall also cause to be issued, in form acceptable to The Jockey Club, certificates required for the registration of foals out of mares bred to KINGMAMBO.

### 4.8. Allocation of Monies.

The Syndicate Manager shall bill each Owner quarterly for the Owner's proportionate amount of stallion keep and other expenses incurred as herein provided. The Syndicate Manager shall allocate to the account of each Owner such Owner's proportionate share of (i) any receipts from the sale by the Syndicate Manager

MG+

KINGMAMBO                                                    Page 8

of Nominations on behalf of the syndicate in a bonus book, and
(ii) any stallion awards attributable to KINGMAMBO from
Breeders' Cup Limited or any other stallion awards program. In
the event of transfer of a Fractional Interest, such allocation
shall be made to the Owner of record of the Fractional Interest
during the majority of the applicable season in the case of any
such receipts from the sale of Nominations and in the case of any
awards to the Owner of record on the last day of the calendar
quarter in which such receipt shall occur. The Syndicate Manager
may deduct the amount of expenses expected to be incurred
hereunder during the twelve calendar months following the receipt
by the Syndicate Manager of such allocated amounts prior to
distributing monies to the Owners.

    4.9.  Defaults.
    The Syndicate Manager shall have an agister's lien upon and a
security interest in any Fractional Interest as to which any
portion of the amounts billable to Owners hereunder and so billed
have not been paid. The Syndicate Manager may assess a service
charge of two percent (2%) per month, payable monthly, upon any
amounts billed to an Owner which remain unpaid for ten days. The
Syndicate Manager shall be entitled to commence legal action upon
30 days prior written notice to an Owner, the date of such notice
being the date upon which the cause of action for nonpayment
shall be deemed to occur. In the event the default shall
continue for a period of 12 months, commencing on the last day of
the first quarter for which the Owner shall be in arrears, the
Syndicate Manager shall be entitled to sell the Fractional
Interest, as agent and attorney-in-fact, for the Owner who is so
in default. In addition, the Syndicate Manager may withhold
stallion service certificates and may refuse to permit a mare to
be bred on any season attributable to a Fractional Interest, the
Owner of which is (a) more than two calendar quarters in arrears
on amounts payable by such Owner; or (b) is in default of an
installment of principal or interest on the purchase price to the
Initial Owner; or (c) who fails to furnish evidence, acceptable
to the Syndicate Manager, either (i) that the use of any
Nomination by the Owner or his assignee is not subject to any
sales and use taxes or other taxes imposed by the Commonwealth of
Kentucky or other jurisdiction, or (ii) that all such taxes have
been paid.

    4.10.  Compensation.
    As full compensation for its services in each breeding season
that KINGMAMBO stands at stud under its supervision, the
Syndicate Manager shall receive stallion keep and, subject to
Section 3.6, four free Nominations, all as provided herein.
Commencing January first in each calendar year, the Syndicate
Manager may sell, transfer, assign or otherwise dispose of its
Nominations for the ensuing breeding season, but any other
attempted sale, transfer, assignment or other disposition by the

MG+

KINGMAMBO                                                        Page 9

Syndicate Manager of its future Nominations shall be voidable and
not binding upon the Owners.

   4.11. <u>Powers of Attorney</u>.
   Each Owner authorizes and empowers the Syndicate Manager, and
constitutes and appoints the Syndicate Manager as his agent and
attorney-in-fact, (a) to execute and deliver and generally to do
and file on behalf of such Owner such things as the Syndicate
Manager shall deem necessary or appropriate with The Jockey Club
and (b) to execute such elections as may be required by the
taxing authorities of the United States and as may be herein
provided.

   4.12. <u>Other Activities</u>.
   The Syndicate Manager shall not be required to devote himself
exclusively to his duties hereunder and the Syndicate Manager
shall be expressly permitted to conduct any other business
activities and to accept any other engagements, including,
without limitation, the management of other stallions, the
purchase, sale, racing and breeding of Thoroughbreds, or any one
or more of them.

   4.13. <u>Control</u>.
   Certain insurance policy provisions purchased by the Owners
may provide that the insurance carriers shall have the right to
exercise sole and absolute discretion concerning the control of
KINGMAMBO (including control of the treatment, location, use,
retention and/or disposal of KINGMAMBO) in the event of
potential infertility or sickness of, or accident to,
KINGMAMBO. The Syndicate Manager shall be required to abide
by such provisions, and the Owners shall be bound by such
provisions with respect to the insurance obtained by the
Syndicate Manager pursuant to Section 6.5. The Syndicate Manager
shall not be bound by, and shall have no obligation or liability
from failing to abide by, any such provisions in policies issued
otherwise, but the Syndicate Manager may in its sole and absolute
discretion, nevertheless allow the insurance carriers to exercise
such policy provisions relating to control. The Syndicate
Manager shall have no liability for or obligation with respect to
any action taken by any insurance carriers or their
representatives. Nothing in this paragraph shall be construed to
divest any Owner of his Fractional Interest other than an Owner
covered by the insurance obtained by the Syndicate Manager.

5.   TRANSFERS

   5.1. <u>Auctions</u>.
   Until December 31, 1998, no Fractional Interest and no
Nomination may be offered for sale at an auction sale. For
purposes of this Agreement, an auction sale shall include all

MCH

auctions  (whether public, private or otherwise) and similar sales
at  which  items are sold to the highest bidder, whether or not an
auctioneer  is  present  and  whether  the  bidders are present or
participate  through telecommunications or make written bids.  For
purposes  of settling an estate, the Syndicate Manager may, in his
sole  discretion,  grant  permission  for  an  estate  to sell one
Fractional  Interest  at public auction in any one calendar month.
With  respect  to the auction sale, when permitted, of Nominations
and  Fractional  Interests,  only  one  Nomination  and  only  one
Fractional  Interest  may  be  offered  for  sale by any one sales
company  (including  all  affiliates  thereof) during any calendar
month.    Any  Owner  desiring  to sell a Nomination or Fractional
Interest  at auction shall  notify  the Syndicate Manager of the
time,  date  and  place  of  auction at least 30 days prior to the
sale  and  shall  designate  the particular Fractional Interest or
Nomination  to  be  sold.   Only Owners so notifying the Syndicate
Manager  shall  be  entitled  to  sell  at auction, and should the
Syndicate  Manager  receive  notice  with respect to more than one
Fractional  Interest  or  Nomination,  the Syndicate Manager shall
determine  by  lot  which Fractional Interest and which Nomination
may  and  which  may  not  be  sold  at  each  auction  sale.  The
Syndicate  Manager  shall  notify  the  Owners of auction sales at
which Fractional Interests are to be offered.

   5.2.   Nominations.
   Subject   to   the   provisions  of  the  preceding  paragraph,
Nominations  may  be  sold,  exchanged or otherwise transferred or
assigned,  provided  that  (a)  Nominations may not be accumulated
from  one  breeding  season to another, (b) written notice of such
transfer  must  be  given to the Syndicate Manager within ten days
of  sale,  and  (c)  any  sale or transfer by an Owner who has not
made  payment  in  full  of indebtedness secured by his Fractional
Interest  and  payable  to  the  Initial  Owner  or  the Syndicate
Manager  is  subject  to  the  conditions set forth in the security
agreement  creating  the  security  interest.    In  the event the
Syndicate  Manager  shall  have  been  notified  that a Fractional
Interest  is subject to a security interest, the Syndicate Manager
may,  but  shall not be required to, refuse to record the transfer
of  any  Nomination  without  the  written  approval of the person
holding the security interest.

   5.3.   Fractional Interests; Right of First Refusal.
   (a)     The  first  sale  of  each  Fractional  Interest by the
Initial  Owners,  as  well  as  the  repossession  and resale of a
Fractional  Interest  repossessed by either of them, shall be free
of  any  right of first refusal on the part of any person, but any
subsequent  sale by the successor in interest of either such Owner
or  any  other  person  shall  be  subject  to  the first right to
purchase described in the following subsections (b) and (c).

MCH

KINGMAMBO                                                    Page 11

    (b)     Except as provided in Section 5.3(a) hereof, no
Fractional Interest in KINGMAMBO shall be transferred without
offering the other Owners the first right to purchase any
Fractional Interest or Interests which an Owner may desire to
sell.

    (c)     Except as provided in Section 5.3(a) hereof, any Owner
who receives an offer to transfer a Fractional Interest or
Interests which he is willing to accept shall notify the
Syndicate Manager in writing, stating the name of the proposed
transferee, the terms of the offer and, in the event of an offer
to exchange, the identity and quotation of the then prevailing
fair market value of the fractional interests to be exchanged.
The Syndicate Manager, immediately upon receipt of such notice,
shall notify all other Owners of the name of the proposed
transferee and the terms of the offer, which notice shall
constitute an offer to each Owner to exercise the first right to
purchase such Fractional Interest or Interests on the same
terms.    Any Owner desiring to accept said offer shall, within
seven business days of the sending of such notice by the
Syndicate Manager, so notify the Syndicate Manager in writing.
In the event that more than one eligible person desires to accept
the offer, then the person who shall be entitled to purchase
shall be determined by the Syndicate Manager by lot.    The
electing Owner entitled to purchase the Fractional Interest shall
be required to purchase the same at 4:00 p.m. on the first
business day following the determination by the Syndicate Manager
if, and only if, at such time KINGMAMBO is in good general
health, at which point risk of loss shall pass. Within ten
business days after receipt of the original notice specifying the
terms of the proposed sale, the Syndicate Manager shall notify
the selling Owner of a Fractional Interest in writing of the
acceptance or rejection of the offer and, if such offer is not
accepted, or in the absence of such notice in writing, the Owner
desiring to sell may then sell the Fractional Interest or
Interests to the person making the offer upon the terms stated,
subject, however, to all the terms and conditions of this
Agreement.    If the sale is not closed within thirty (30) days,
however, the Fractional Interest must again be offered to the
Owners as set out above before any further sale. In the event
the original notice given by the Owner desiring to sell shall
specify that more than one Fractional Interest is to be sold, any
other Owner may elect to purchase only one Fractional Interest.

    (d)     Fractional Interests may (i) pass by inheritance or
will, (ii) be transferred by gift or sale to a member of the
Owner's immediate family, or (iii) be transferred to or from any
firm, partnership or other entity controlled by the Owner and his
immediate family or any of them, all without being subject to the
first right to purchase; provided, however, that in each case the

*Mat*

KINGMAMBO                                          Page 12

Syndicate Manager shall be furnished with affidavits or other
information acceptable to it that any proposed transfer is not
subject to the first right to purchase.

    5.4.   Expenses; Taxes.
    All expenses incurred by the Syndicate Manager in connection
with the offer outlined above shall be paid by the selling
Owner.   In the event an Owner shall attempt to transfer a
Fractional Interest at a time when syndicate expenses have been
incurred and the Owner has not then paid his proportionate share
of such expenses, the transferee of such Fractional Interest
shall assume and shall be required to pay as a condition of
assuming all rights of ownership of such Fractional Interest, all
outstanding expenses of the syndicate attributable to the
Fractional Interest being acquired.   Each Owner shall be
responsible for all sales, use and other taxes payable in
connection with the use, sale or transfer of his Fractional
Interest and Nominations attributable thereto.   Each Owner shall
either deposit with the Syndicate Manager the amount of all such
taxes for remittance to the appropriate taxing authority or
furnish to the Syndicate Manager such evidence of payment of, or
exemption from, all such taxes as the Syndicate Manager shall
reasonably request.

    5.5.   Effectiveness.
    No transfer or attempted transfer of a Nomination or of a
Fractional Interest by an Owner or assigns shall be effective as
to the Syndicate Manager or the other Owners until such transfer
shall have been recorded by the Syndicate Manager on the books
and records maintained by the Syndicate Manager.

6.  OPERATION OF THE SYNDICATE; MISCELLANEOUS

    6.1.   Meetings.
    The Syndicate Manager or the Owners of 18 or more Fractional
Interests may call a meeting of Owners upon not less than 10 days
written notice, to be held within Woodford County or Fayette
County, Kentucky.   The notice must state the date, time, place
and purpose of the meeting.   Each Owner shall be entitled to one
vote for each Fractional Interest owned by him which may be cast
in person or by agent or proxy, duly authorized in writing, an
original of which shall be presented at the meeting for
inspection.   No subject matter shall be considered at any meeting
unless notice thereof is included in the notice of such meeting.
Except as otherwise provided herein, a majority vote shall decide
all questions properly submitted, provided a majority of all
Fractional Interests is present in person or represented by proxy
at such meeting.   Any action which may be taken at a meeting may
be taken without a meeting if Owners of the required number of
Fractional Interests vote by written instrument so to do.

                                         MCH

KINGMAMBO                                          Page 13

6.2.   Proportionate.
"Proportionate" when used herein with respect to any Owner shall mean the percentage determined by dividing the number of Fractional Interests owned by such Owner by the total number of Fractional Interests (i.e., 42).

6.3.   By Lot.
In those instances where a determination is to be made by lot, the Syndicate Manager shall either notify the Owners that drawings will be held at a designated time and place within Woodford County or Fayette County or that all drawings will be held by an accounting firm or attorney pursuant to written instructions from the Syndicate Manager. Each Owner participating shall be entitled to a number of lots equal to the number of Fractional Interests owned by such Owner. In the case of a reduced book, the Syndicate Manager, Flaxman, Cashmark, and Head shall be entitled to a number of lots equal to their respective number of Nominations in the normal book. In the case of a determination by lot of those entitled to participate in an excess book or a reduced book, once a lot shall have been drawn, it shall not be included in subsequent drawings for the current or future breeding seasons until all other lots shall have been drawn, at which time the procedure may be repeated.

6.4.   Tax Election.
It is not the purpose or intention of this Agreement to create, and this Agreement shall not be considered as creating a joint venture, partnership or other relationship whereby any party shall be held liable for the omissions or commissions of any other party; but, if for federal tax purposes this Agreement or the relationship established hereby and the operations hereunder are regarded as a partnership as that term is defined in the Internal Revenue Code of 1986, then the Owners hereby elect not to be treated as a partnership and to be excluded from the application of all provisions of Subchapter K, Chapter 1, subtitle A of such Code. In making this election, each and every Owner acknowledges that the income derived from him by reason of his ownership of a Fractional Interest can be adequately determined without the necessity for any computation of partnership taxable income, and all such Owners agree not to give notices or take any other action inconsistent with the election hereby made. In the event that for whatever reason, the Internal Revenue Service shall require that computations be made pursuant to Subchapter K, the initial Owner and each other Owner elect, and as a condition of remaining an Owner agree, (a) to have depreciation determined pursuant to Section 704(c)(3) as though undivided interests had been contributed by each Owner and, in the case of a transfer of a Fractional Interest to have the basis of KINGMAMBO adjusted in accordance with the provisions of Section 743 of the Internal Revenue Code of 1986, and authorize the Syndicate Manager to file such election in accordance with

MCH

C0042

KINGMAMBO                                                        Page 14

Section 754 of such Code, (b) to have each other item of expense allocated as provided in this Agreement and (c) to have each item of income, in the case of a Nomination, allocated to the Owner entitled to use the same, and in the case of cash, allocated to the Owner to whom paid or credited.

6.5.  Insurance Availability.
No Owner may separately insure against the infertility (congenital or as the result of accident, sickness, or disease) of KINGMAMBO prior to December 1, 1994, without the consent of the Syndicate Manager in its sole discretion. The Syndicate Manager shall obtain a single policy against such risks and each Owner electing coverage shall be entitled to a pro rata portion of the single policy to be obtained by the Syndicate Manager. After December 1, 1994, each Owner may separately obtain any insurance to the extent of his insurable interest.

6.6.  Breach; Venue.
No action for the breach of any provision of this Agreement or in connection with KINGMAMBO or the operation hereof may be commenced more than one year after the event giving rise to such cause of action shall have occurred. Each Owner agrees to hold harmless each other Owner and the syndicate created hereby from any costs, expenses and liabilities resulting from a breach or alleged breach of one or more representations or warranties made in connection with the sale or transfer of a Fractional Interest by such Owner. Venue for any action brought hereunder or otherwise in connection with KINGMAMBO shall be in Versailles, Woodford County, Kentucky, or United States District Court, Lexington, Kentucky, and such action may be commenced by service by mail to the last address shown on the syndicate books maintained by the Syndicate Manager or by any other method permitted by law.

6.7.  Headings; Separability.
Article, section and paragraph headings and the table of contents are for convenience only and shall not affect the construction hereof. In case any provision shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired.

6.8.  Termination; Modification.
This Agreement and the Syndicate created hereunder may be terminated, cancelled, altered, amended or modified with the affirmative vote of the Owners holding 34 of the 42 Fractional Interests. If not sooner terminated, the Syndicate will terminate automatically on December 31, 2050.

6.9.  Notices.
Notices required hereunder to be given to the Owners shall be effective and binding if sent by prepaid United States mail,

MCH

12/13/93   12:32

004

KINGMAMBO                                                          Page 15

telegram, mailgram, facsimile, cablegram, delivery service, or delivered in person to the address of the respective Owner, as the address is shown on the syndicate records maintained by the Syndicate Manager, and notices to the Syndicate Manager shall only be effective and binding upon the actual and timely receipt thereof by the Syndicate Manager.

6.10. Binding Effect.
This Agreement and each and every provision hereof shall be binding upon and shall inure to the benefit of the parties to this Agreement, and all other persons who acquire a Fractional Interest or the right thereto, the respective partners thereof where any such party or person is a partnership, and their respective heirs, personal representatives, administrators, successors, assigns and transferees, whether with or without consideration.

6.11. Controlling Law.
This Agreement, as well as all the instruments executed with respect to or pertaining to any right or interest created hereunder, shall be governed by and construed in accordance with the prevailing law of the Commonwealth of Kentucky.

6.12. Counterparts.
This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same Agreement.

IN WITNESS WHEREOF each of the parties has signed, or caused to be signed on its behalf, this Agreement all as of the day and year first written above.

FLAXMAN HOLDINGS LIMITED


BY *Margaret Hall, attorney*
   *in Fact for Flaxman Holdings*
   *Limited*                          W. S. Farish
   *12/14/93*
LANE'S END STALLIONS, INC.


BY *S. T. Farish*


o\le f\KINGMARY

KINGMAMBO                                                    Page 15

telegram, mailgram, facsimile, cablegram, delivery service, or delivered in person to the address of the respective Owner, as the address is shown on the syndicate records maintained by the Syndicate Manager, and notices to the Syndicate Manager shall only be effective and binding upon the actual and timely receipt thereof by the Syndicate Manager.

6.10. Binding Effect.
This Agreement and each and every provision hereof shall be binding upon and shall inure to the benefit of the parties to this Agreement, and all other persons who acquire a Fractional Interest or the right thereto, the respective partners thereof where any such party or person is a partnership, and their respective heirs, personal representatives, administrators, successors, assigns and transferees, whether with or without consideration.

6.11. Controlling Law.
This Agreement, as well as all the instruments executed with respect to or pertaining to any right or interest created hereunder, shall be governed by and construed in accordance with the prevailing law of the Commonwealth of Kentucky.

6.12. Counterparts.
This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same Agreement.

IN WITNESS WHEREOF each of the parties has signed, or caused to be signed on its behalf, this Agreement all as of the day and year first written above.

FLAXMAN HOLDINGS LIMITED


BY *Margaret Hall, attorney in*
*Fact for Flaxman Holdings*
*Limited*
*12/14/93*                              W. S. Farish
LANE'S END STALLIONS, INC.



BY _____


c\lef\KINGMAMBO

# EXHIBIT C

230.357  Written bill of sale or acknowledgment of purchase -- Requirements -- Auction requirements -- Dual agents -- Disclosures required -- Violations -- Auction disclosures not required -- Limitation on application of section -- Enforceability of contracts for payment of commission.

(1)  For purposes of this section, "equine" means a horse of any breed used for racing or showing, including prospective racehorses, breeding prospects, stallions, stallion seasons, broodmares, yearlings, or weanlings, or any interest therein.

(2)  Any sale, purchase, or transfer of an equine shall be:

    (a)  Accompanied by a written bill of sale or acknowledgment of purchase and security agreement setting forth the purchase price; and

    (b)  Signed by both the purchaser and the seller or their duly authorized agent or, in a transaction solely relating to a season or fractional interest in the stallion, signed by the syndicate manager or stallion manager.

(3)  In circumstances where a transaction described in subsection (2) of this section is accomplished through a public auction, the bill of sale requirement described in subsection (2) of this section may be satisfied by the issuance of an auction receipt, generated by the auction house, and signed by the purchaser or the purchaser's duly authorized agent. An agent who signs an auction receipt on behalf of his or her principal shall do so only if authorized in writing. When presented with such authorization, all other parties to the transaction may presume that an agent signing on behalf of his or her principal is duly authorized to act for the principal.

(4)  It shall be unlawful for any person to act as an agent for both the purchaser and the seller, which is hereby defined as a dual agent, in a transaction involving the sale, purchase, or transfer of an interest in an equine without:

    (a)  The prior knowledge of both the purchaser and the seller; and

    (b)  Written consent of both the purchaser and the seller.

(5)  It shall be unlawful for a person acting as an agent for either a purchaser or a seller or acting as a dual agent in a transaction involving the sale, purchase, or transfer of an equine to receive compensation, fees, a gratuity, or any other item of value in excess of five hundred dollars ($500) and related directly or indirectly to such transaction, from an individual or entity, including any consigner involved in the transaction, other than an agent's principal, unless:

    (a)  The agent receiving and the person or entity making the payment disclose in writing the payment to both the purchaser and seller; and

    (b)  Each principal for whom the agent is acting consents in writing to the payment.

(6)  Any person acting as an agent for a purchaser or seller or acting as a dual agent in a transaction involving the sale, purchase, or transfer of an equine shall, upon request by his or her principal or principals, furnish copies of all financial records and financial documents in the possession or control of the agent pertaining to the transaction to the principal or principals. For purposes of this subsection, financial records shall not include the agent's or owner's work product used to internally evaluate the equine.

Page 1 of 2

C0047

(7)   Any person injured by a violation of this section shall recover treble damages from persons or entities violating this section, and the prevailing party in any litigation under this section shall be entitled to an award of costs of the suit, reasonable litigation expenses, and attorney's fees. As used in this section, treble damages shall equal three (3) times the sum of:

    (a)   The difference, if any, between the price paid for the equine and the actual value of the equine at the time of sale; and

    (b)   Any payment made in violation of subsection (5) of this section.

(8)   Nothing in this section shall require disclosure of compensation arrangements between a principal and an agent where no dual agency exists, where the agent is acting solely for the benefit of his or her principal, and where the agent is being compensated solely by his or her principal.

(9)   Notwithstanding any provision of the Kentucky Revised Statutes to the contrary, for transactions contemplated by this section that are accomplished through a public auction, this section shall not require disclosure of the reserves, the identity of the principals, or the auctioneers' commissions. Auction companies shall not be deemed to be dual agents for all purposes under this section.

(10)   The provisions of this section shall not apply to the sale, purchase, or transfer of an equine used for showing if the sale, purchase, or transfer does not exceed ten thousand dollars ($10,000).

(11)   No contract or agreement for payment of a commission, fee, gratuity, or any other form of compensation in connection with any sale, purchase, or transfer of an equine shall be enforceable by way of an action or defense unless:

    (a)   The contract or agreement is in writing and is signed by the party against whom enforcement is sought; and

    (b)   The recipient of the compensation provides a written bill of sale for the transaction in accordance with subsections (2)(a) and (3) of this section.

(12)   No person shall be held liable under this section unless that person has actual knowledge of the conduct constituting a violation of this section.

    Effective: June 26, 2007

    History: Amended 2007 Ky. Acts ch. 138, sec. 1; effective June 26, 2007. — Created 2006 Ky. Acts ch. 171, sec. 2; effective 12-26-06.

Page 3 of 3

# EXHIBIT D

# CONFIDENTIAL AGREEMENT OF PURCHASE AND SALE (herein "Agreement")

This is to confirm that KNO INVESTMENTS LLC (the "Buyer") has agreed to purchase Share No. 8 (herein "Share") of the Lemon Drop Kid Stallion Syndicate (herein "Syndicate") from **Ashley Andrews** (herein "Seller") for Three Hundred Fifty Thousand ($350,000) Dollars, (herein the "Offer Price Purchase Price")

Seller agrees to immediately request that the Stallion Syndicate Manager provide Seller, within five (5) business days, 1) a fully executed Lemon Drop Kid Syndicate Agreement (herein "Syndicate Agreement") dated on or about November 30, 2000, including all amendments, changes and notices, and 2) the most recent veterinary statement regarding the current condition of Lemon Drop Kid (herein "Stallion"). Seller agrees to request that the Syndicate Manager allow Buyer to have a licensed KY veterinarian conduct a physical examination and all tests he/she deems necessary to confirm the acceptable condition of the stallion. Buyer agrees that it will accept or reject the Syndicate Agreement and physical condition of the stallion within ten (10) business days after receipt of the Syndicate Agreement or five (5) days prior to the Closing Date of the sale, whichever first occurs. Upon acceptance by Buyer, and at its sole discretion, this transaction will close on or before October 18, 2010, (herein the "Closing Date"). If, for any reason, Buyer rejects any condition contained in either the Syndicate Agreement or the veterinary report, this Agreement shall automatically terminate and both sides will be released from their obligations hereunder.

Seller further agrees that the Share will be presented to the Syndicate for the Offer Price by tendering the Notice attached hereto as Exhibit "A" immediately upon the execution of this agreement. If the Offer Price is **not matched** by the Syndicate, the Buyer, subject to the conditions contained herein, shall immediately close the sale as outlined herein at the Purchase Price. Upon the closing of the sale by Buyer, the Seller shall pay a Fifty Thousand ($50,000) Dollar Commission (herein "Commission") to its Agent, Jerry Jamgotchian (herein "Dual Agent or Agent"). Said commission shall partially reimburse Agent for his due diligence efforts, travel expenses, drafting fees, legal services, veterinary charges, insurance premiums, costs and commissions due to it, its associate Agents and other consultants hired or used by Agent on behalf of the Buyer and Seller. Agent has disclosed to Seller that he is working as a dual Agent and acting for both Buyer and Seller in this transaction and that Agent has a partial ownership in Buyer, which Seller acknowledges and fully authorizes. Payment by Seller to Agent of its commission shall be made at the same time that Seller receives Buyer's payment of the Purchase Price. In the event the share is **matched** by the Syndicate, the Commission due Agent shall be paid by Seller to Agent within twenty-four (24) hours after Seller has received payment from the Syndicate for acquisition of the Matched Share.

Upon closing of this Share sale to Buyer, Buyer and Seller agree that Buyer will acquire all of Seller's past rights, claims and interests and all of Seller's future rights, claims and interests in the Syndicate, in addition to receiving all funds disbursed by the syndicate manager (for any reason and or any time period) after the transfer of the Share to Buyer by the Syndicate Manager pursuant to the Syndicate Agreement. Seller acknowledges that Buyer is buying all claims, rights and interests of the Seller in the Syndicate Agreement since the Seller acquired this share on or about November 8, 2005. The parties further agree that Seller shall provide Buyer with a Bill of Sale prior to the closing of this sale.

Exhibit A
Page 44 of 54

09/07/2010

Upon closing of this share sale, Seller further warrants that the Share is free and clear of all liens and encumbrances, including but not limited to bearing and other bills, and that Seller has the full right and authority to sell, transfer, and convey its Share to the Buyer. All Syndicate expenses relating to Fractional Interest until time of closing shall be responsibility of Seller, thereafter all expenses shall be the responsibility of Buyer, as prorated on the Closing Date.

SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES AS TO THE MERCHANTABILITY OR AS TO THE FITNESS OF THE STALLION OR HIS SEMEN WHATSOEVER TO BUYER RELATING TO THIS TRANSACTION.

Risk of loss shall pass from Seller to Buyer upon Syndicate Clearance or at such time as the Offer is matched by a current Syndicate Member. In the event any current Syndicate Member matches the Offer, the risk of loss shall immediately pass to the Syndicate member/s who matched the offer. Payment by the Syndicate or Syndicate Manager of the matched amount shall be made pursuant to the Syndicate Agreement.

If either party hereto, including the Syndicate or the Syndicate Manager, brings an action at law or in equity to enforce, interpret or seek redress for the breach of this agreement, then the prevailing party in such action shall be entitled to recover all court costs, witness fees and reasonable attorneys' fees, at trial or on appeal in addition to all other appropriate relief. The parties, as well as the Syndicate, agree that venue for any action associated with this agreement shall be filed and litigated in the Los Angeles County Superior Court, the judicial district where Buyer signed the agreement.

The parties acknowledge that this agreement can be signed in any number of counterparts and by a fax signature, each of which will be fully binding on all parties hereto, act as an original signature and have the same effect as if all of the original signatures are on the same agreement.

This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective partners, principals, Agents, employees, directors, officers, representatives, trustees, successors, affiliates, heirs, assigns and investors.

This agreement may not be amended or changed without the written consent of all parties hereto. The parties further agree that this agreement is confidential and will not be disclosed to any other party unless an order waiving the confidentiality of this agreement is issued by the Los Angeles Superior Court. The signatures below will confirm that the preceding terms and conditions are understandable and acceptable to all parties to this agreement.

## BUYER:

KNC INVESTMENTS LLC

Accepted by _____          Dated     September 7, 2010
                    John E. Budd, Authorized Agent
                    330 North Brand Blvd #200
                    Glendale, CA 91203

C0051

9/3/2010

**SELLER:**

Accepted by: _Ashley Andrews_ Dated: September 7, 2010
           Ashley Andrews
           23 Old Kings Highway South
           Darien, CT 06620

**DUAL AGENT:**

Accepted by: _____ Dated: September 7, 2010
           Jerry Jamgotchian
           P.O. Box 1810
           Manhattan Beach, CA 90267

NOTICE TO SYNDICATE MANAGER OF ACCEPTED OFFER (herein "Notice")

September 6, 2010

Via Fax: 859-873-3546
Lanes End Farm (Attn: Lemon Drop Kid Syndicate Manager)
P.O. Box 626
Versailles, KY 40383

Dear Sirs:

Please be advised that Ashley Andrews (herein "Seller") has received and accepted an offer (herein "Offer") of Three Hundred and Fifty Thousand ($350,000) Dollars, which includes a commission, to purchase Share A05 (herein "Share") of the Lemon Drop Kid Syndicate (herein "Syndicate") from KNC Investments LLC (herein "Buyer"). Seller herein requests that the Syndicate Manager immediately provide Seller with a copy of 1) the most current Syndicate Agreement including all Amendments, changes and notices, 2) the most recent veterinary report regarding the medical condition of Lemon Drop Kid and 3) immediately poll all Syndicate members pursuant to the notice and transfer provisions contained in the Syndicate Agreement.

Upon the closing of this Share Sale on or before October 18, 2010 (herein "Closing Date"), Buyer and Seller agree that Buyer will receive all funds disbursed by the syndicate manager for any reason and/or time period and that Buyer will acquire all of Seller's past rights, claims and interests since the share was acquired on or about November 5, 2003, as well as all of Seller's future rights, claims and interests in the Lemon Drop Kid Syndicate.

SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES AS TO THE MERCHANTABILITY OR AS TO THE FITNESS OF THE STALLION OR HIS SEMEN WHATSOEVER TO BUYER RELATING TO THIS TRANSACTION.

Risk of loss shall pass from Seller to Buyer upon Syndicate Clearance or at such time as the Offer is matched by a Syndicate Member. In the event any current Syndicate Member matches the Offer, the risk of loss shall immediately pass to the Syndicate member/s who matched the offer. Payment by the Syndicate of the matched share amount shall be made within two (2) business days of Syndicate Clearance to Seller. If the Syndicate Member or Manager fail to timely pay the offer amount pursuant to this Notice, then the Seller has the full and immediate right and authority to transfer this share and any alleged matching by the Syndicate Manager or Member shall be deemed void and of no further legal effect. Upon Sellers request and pursuant to the Syndicate Agreement the Syndicate Manager shall immediately and without condition transfer and assign the Sellers share to the Buyer upon written verification from Seller that the Share Sale has closed and all rights, claims and interests have been transferred to Buyer pursuant to a fully executed Bill of Sale.

**BUYER:**

KNC INVESTMENTS LLC

Accepted by _____      Dated   September 7, 2010
         John C. Sadd, CPA, Authorized Agent

Exhibit A
Page 47 of 54

**SELLER:**

Accepted by:_____ Dated  September $7$, 2010
          Ashley Andrews

**DUAL AGENT:**

Accepted by:_____ Dated  September 7, 2010
          Jerry Jamgotchian

EXHIBIT "A"

2

# EXHIBIT E

C0055

9 3-2010

# CONFIDENTIAL AGREEMENT OF PURCHASE AND SALE (herein "Agreement")

This is to confirm that KNC INVESTMENTS LLC (the "Buyer") has agreed to purchase Share #A13 (herein "Share") of the Kingmambo Stallion Syndicate (herein "Syndicate") from Ashley Andrews and Robert B. Raphaelson (herein "Seller") for One Hundred Seventy Five Thousand ($175,000) Dollars, (herein the "Offer Price Purchase Price")

Seller agrees to immediately request that the Stallion Syndicate Manager provide Seller, within five (5) business days, 1) a fully executed Kingmambo Syndicate Agreement (herein "Syndicate Agreement") dated on or about December 10, 1993, including all amendments, changes and notices; and 2) the most recent veterinary statement regarding the current condition of Kingmambo (herein "stallion"). Seller agrees to request that the Syndicate Manager allow Buyer to have a licensed KY veterinarian conduct a physical examination and all tests he/she deems necessary to confirm the acceptable condition of the stallion. Buyer agrees that it will accept or reject the Syndicate Agreement and physical condition of the stallion within ten (10) business days after receipt of the Syndicate Agreement or five (5) days prior to the Closing Date of the sale, whichever first occurs. Upon acceptance by Buyer, and at its sole discretion, this transaction will close on or before October 18, 2010, (herein the "Closing Date"). If, for any reason, Buyer rejects any condition contained in either the Syndicate Agreement or the veterinary report, this Agreement shall automatically terminate and both sides will be released from their obligations hereunder.

Seller further agrees that the Share will be presented to the Syndicate for the Offer Price by tendering the Notice attached hereto as Exhibit "A" immediately upon the execution of this agreement. If the Offer Price is **not matched** by the Syndicate, the Buyer, subject to the conditions contained herein, shall immediately close the sale as outlined herein at the Purchase Price. Upon the closing of the sale by Buyer, the Seller shall pay a Fifty Thousand ($50,000) Dollar Commission (herein "Commission") to its Agent, Jerry Jamgotchian (herein "Dual Agent or Agent"). Said commission shall partially reimbursement Agent for his due diligence efforts, travel expenses, drafting fees, legal services, veterinary charges, insurance premiums, costs and commission/s due to it, its associate Agent/s and other consultant/s hired or used by Agent on behalf of the Buyer and Seller. Agent has disclosed to Seller that he is working as a dual Agent and acting for both Buyer and Seller in this transaction and that Agent has a partial ownership in Buyer, which both Sellers acknowledge and fully authorize. Payment by Seller to Agent of its commission shall be made at the same time that Seller receives Buyer's payment of the Purchase Price. In the event the share is **matched** by the Syndicate, the Commission due Agent shall be paid by Seller to Agent within twenty four (24) hours after Seller has received payment from the Syndicate for acquisition of the Matched Share.

Upon closing of this Share sale to Buyer. Buyer and Seller agree that Buyer will acquire all of Seller's past rights, claims and interests and all of Seller's future rights, claims and interests in the Syndicate. In addition to receiving all funds disbursed by the syndicate manager (for any reason and/or any time period) after the transfer of the Share to Buyer by the Syndicate Manager pursuant to the Syndicate Agreement. Seller acknowledges that Buyer is buying all claims, rights and interests of the Seller in the Syndicate Agreement since the Seller acquired this share on or about July 6, 2000. The parties further agree that Seller shall provide Buyer with a Bill of Sale prior to the closing of this sale.

37.03/748040

1

Jerry Jamgotchian

Sep 07 10 11:57a

Exhibit A
Page 50 of 54

09 07 2010  12:01 FAX  7028710871        ROBERT RAPHAELSON                                    @004

95 2010

Upon closing of this share sale, Seller further warrants that the Share is free and clear of all liens and encumbrances, including but not limited to boarding and other bills, and that Seller has the full right and authority to sell, transfer, and convey its Share to the Buyer. All Syndicate expenses relating to Fractional Interest until time of closing shall be responsibility of Seller, thereafter all expenses shall be the responsibility of Buyer, as prorated on the Closing Date.

SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES AS TO THE MERCHANTABILITY OR AS TO THE FITNESS OF THE STALLION OR HIS SEMEN WHATSOEVER TO BUYER RELATING TO THIS TRANSACTION.

Risk of loss shall pass from Seller to Buyer upon Syndicate Clearance or at such time as the Offer is matched by a current Syndicate Member. In the event any current Syndicate Member matches the Offer, the risk of loss shall immediately pass to the Syndicate member/s who matched the offer. Payment by the Syndicate or Syndicate Manager of the matched amount shall be made pursuant to the Kingmambo Syndicate Agreement.

If either party hereto, including the Syndicate or the Syndicate Manager, brings an action at law or in equity to enforce, interpret or seek redress for the breach of this agreement, then the prevailing party in such action shall be entitled to recover all court costs, witness fees and reasonable attorneys' fees, at trial or on appeal in addition to all other appropriate relief. The parties, as well as the Syndicate, agree that venue for any action associated with this agreement shall be filed and litigated in the Los Angeles County Superior Court, the judicial district where Buyer signed the agreement.

The parties acknowledge that this agreement can be signed in any number of counterparts and by a fax signature, each of, which will be fully binding on all parties hereto, acts as an original, signature and have the same effect as if all of the original signatures are on the same agreement.

This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective partners, principals, Agents, employees, directors, officers, representatives, trustees, successors, affiliates, heirs, assigns and investors.

This agreement may not be amended or changed without the written consent of all parties hereto. The parties further agree that this agreement is confidential and will not be disclosed to any other party unless an order waiving the confidentiality of this agreement is issued by the Los Angeles Superior Court. The signatures below will confirm that the preceding terms and conditions are understandable and acceptable to all parties to this agreement.

**BUYER:**

KNC INVESTMENTS LLC

Accepted by: _____          Dated:  September 6, 2010
              John L. Reed, Authorized Agent
              330 North Brand Blvd #200
              Glendale, CA 91203

818574894?                              wony Jong.conen             Sep 07 10 11:57a

318574894?                              cnen.ry.raghiolonen            Sep 07 10 11 080

C0037

9/3/2010

## SELLER:

Accepted by: _____ Dated: September __, 2010
　　　　　　　Ashley Andrews
　　　　　　　23 Old Kings Highway South
　　　　　　　Darien, CT 06620

Accepted by: _____ Dated: September 7, 2010
　　　　　　　Robert B. Raphaelson
　　　　　　　32 GULFSTREAM CT.
　　　　　　　LAS VEGAS, NV, 89113

## DUAL AGENT:

Accepted by: _____ Dated: September 6, 2010
　　　　　　　Jerry Jamgotchian
　　　　　　　P.O. Box 1810
　　　　　　　Manhattan Beach, CA 90267

C0058

ROBERT RAPHAELSON

NOTICE TO SYNDICATE MANAGER OF ACCEPTED OFFER (herein "Notice")

September 6, 2010

Via Fax: 859-873-3746
Lanes End Farm (Attn: Kingmambo Syndicate Manager)
P.O. Box 626
Versailles, KY 40383

Dear Sirs:

Please be advised that **Ashley Andrews** and **Robert B. Raphaelson** (herein "Seller") have received and accepted an offer (herein "Offer") of One Hundred and Seventy Five Thousand ($175,000) Dollars, which includes a commission, to purchase Share A15 (herein "Share") of the Kingmambo Syndicate (herein "Syndicate") from KNC Investments LLC (herein "Buyer"). Seller herein requests that the Syndicate Manager immediately provide Seller with a copy of 1) the most current Syndicate Agreement including all Amendments, changes and notices, 2) the most recent veterinary report regarding the medical condition of Kingmambo and 3) to immediately poll all Syndicate members pursuant to the notice and transfer provisions contained in the Syndicate Agreement.

Upon the closing of the Share Sale on or before October 18, 2010 (herein "Closing Date"), Buyer and Seller agree that Buyer will receive all funds disbursed by the syndicate manager for any reason and/or time period and that Buyer will acquire all of Seller's past rights, claims and interests since the share was acquired on or about July 6, 2000, as well as all of Seller's future rights, claims and interests in the Kingmambo Syndicate.

SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES AS TO THE MERCHANTABILITY OR AS TO THE FITNESS OF THE STALLION OR HIS SEMEN WHATSOEVER TO BUYER RELATING TO THIS TRANSACTION.

Risk of loss shall pass from Seller to Buyer upon Syndicate Clearance or at such time as the Offer is matched by a Syndicate Member. In the event any current Syndicate Member matches the Offer, the risk of loss shall immediately pass to the Syndicate member/s who matched the offer. Payment by the Syndicate of the matched share amount shall be made within two (2) business days of Syndicate Clearance to Seller. If the Syndicate Member or Manager fail to timely pay the offer amount pursuant to this Notice, then the Seller has the full and immediate right and authority to transfer this share and any alleged matching by the Syndicate Manager or Member shall be deemed void and of no further legal effect. Upon Seller's request, and pursuant to the Syndicate Agreement, the Syndicate Manager shall immediately and without condition transfer and assign the Seller's share to the Buyer upon written verification from Seller that the Share Sale has closed and all rights, claims and interests have been transferred to Buyer pursuant to a fully executed Bill of Sale.

**BUYER:**

KNC INVESTMENTS LLC

Accepted by: _____     Dated: September 6, 2010
John L. Sagh, CPA Authorized Agent

Exhibit A
Page 53 of 54

**SELLER:**

Accepted by: _____ Dated: September ___, 2010
Ashley Andrews

Accepted by: _____ Dated: September **7**, 2010
Robert B. Raphaelson

**DUAL AGENT:**

Accepted by: _____ Dated: September 6, 2010
Jerry Rungetobian

**EXHIBIT "A"**

2

C0060    Exhibit A
Page 54 of 54

Exhibit B

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Ronald S. Caswell, Esq. (161113)<br>Caswell & Cannon<br>1625 Warnall Avenue, Suite 100<br>Los Angeles, CA 90024<br>TELEPHONE NO.: 310/282-8150    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* rscaswell@sbcglobal.net<br>ATTORNEY FOR *(Name):* Plaintiffs | FOR COURT USE ONLY<br><br>**FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>OCT 2 1 2010<br><br>JOHN A. CLARKE, CLERK<br>BY RAUL SANCHEZ, DEPUTY |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS:  111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE:  Los Angeles, CA 90012
BRANCH NAME:  Central

| PLAINTIFF/PETITIONER: KNC Investments, LLC and Jerry Jamgotchian | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Lane's End Stallions, Inc., et al. | BC 447488 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

    a. [✓] summons

    b. [✓] complaint

    c. [✓] Alternative Dispute Resolution (ADR) package

    d. [✓] Civil Case Cover Sheet *(served in complex cases only)*

    e. [ ] cross-complaint

    f. [✓] other *(specify documents):* Cover sheet addendum, notice of case assignment, peremptory challenge

3. a. Party served *(specify name of party as shown on documents served):*

    Defendant Ashley Andrews

    b. [✓] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

    Attorney David Faughn, Esq., by email per written agreement

4. Address where the party was served:
    By email to: David Faughn, dfaughn@kentuckylaw.com, 271 West Short St, #600, Lexington, KY

5. I served the party *(check proper box)*

    a. [✓] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):* 10/19/10 by email  (2) at *(time):*  12:05 p.m.

    b. [ ] **by substituted service.** On *(date):*            at *(time):*         I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

        (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

        (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*         from *(city):*         or [ ] a declaration of mailing is attached.

        (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

Exhibit B
Page 1 of 2

| PLAINTIFF/PETITIONER: KNC Investments, LLC and Jerry Jamgotchian | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Lane's End Stallions, Inc., et al. | BC 447488 |

5.    c. ☐   **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

      (1) on *(date):*              (2) from *(city):*

      (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)

      (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐   **by other means** *(specify means of service and authorizing code section):*

       ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☑   as an individual defendant.
   b. ☐   as the person sued under the fictitious name of *(specify):*
   c. ☐   as occupant.
   d. ☐   On behalf of *(specify):*
       under the following Code of Civil Procedure section:

       ☐ 416.10 (corporation)        ☐ 415.95 (business organization, form unknown)
       ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)
       ☐ 416.30 (joint stock company/association)        ☐ 416.70 (ward or conservatee)
       ☐ 416.40 (association or partnership)        ☐ 416.90 (authorized person)
       ☐ 416.50 (public entity)        ☐ 415.46 (occupant)
                                   ☐ other:

7. **Person who served papers**
   a. Name: Ronald S. Caswell, Esq.
   b. Address: 1625 Warnall Avenue, Suite 100, Los Angeles, CA 90024
   c. Telephone number: 310/282-8150
   d. **The fee for service was:** $ 0
   e. I am:
      (1) ☑ not a registered California process server.
      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
      (3) ☐ a registered California process server:
          (i) ☐ owner   ☐ employee   ☐ independent contractor.
          (ii) Registration No.:
          (iii) County:

8. ☑   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     or

9. ☐   **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: October 19, 2010

Ronald S. Caswell, Esq.
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                 ▶              (SIGNATURE )

C0082

Exhibit B
Page 2 of 2

Exhibit C

SUM-100

# SUMMONS
## (CITACION JUDICIAL)



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
OF ORIGINAL FILED
Superior Court of California
Count

OCT 1 4 2010

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
RUGENA LOPEZ

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Lane's End Stallions, Inc., a Texas corporation; Ashley Andrews, an individual; [Additional Parties Attachment Form is attached]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KNC Investments, LLC, a California limited liability company; and Jerry Jamgotchian, an individual.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org) en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California

County of Los Angeles, Central Courthouse, 111 N. Hill Street,
Los Angeles, CA 90012

CASE NUMBER
(Número del Caso): BC447488

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ronald S. Caswell, Esq., Caswell & Cannon, 1625 Warnall Ave., Ste. 100, LA, CA 90024, 310.282.8150

DATE: October 14, 2010          Clerk, by _____, Deputy
*(Fecha)*                        *(Secretario)*         *(Adjunto)*
                                                        RUGENA LOPEZ

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)

JOHN A. CLARKE

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):
   under:  ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

## SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

C0063

Exhibit C
Page 1 of 2

SUM-200(A)

SHORT TITLE
KNC Investments, LLC, et al. v. Lane's End Stallions, Inc., et al.

CASE NUMBER

## INSTRUCTIONS FOR USE

▶ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons

▶ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.)

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Robert B. Raphaelson, an individual; and DOES 1 through 10, inclusive.

Page [ 1 ] of [ 1 ]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

## ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

C0084

Exhibit C
Page 2 of 2

Exhibit D

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Ronald S. Caswell, Esq. (161113)<br>Caswell & Cannon<br>1625 Warnall Avenue, Suite 100<br>Los Angeles, CA 90024<br>TELEPHONE NO. 310 282-8150    FAX NO.:<br>ATTORNEY FOR *(Name)*: Plaintiffs KNC Investments, LLC and Jerry Jamgotchian | CONFORMED COPY<br>OF ORIGINAL FILED<br>Superior Court of California |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: [same]
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

OCT 14 2010

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
RICHARD TORA

CASE NAME:
KNC Investements, LLC, et al. v. Lane's End Stallions, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: | BC447488 |

*Items 1–6 below must be completed (see instructions on page 2)*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☑ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☐ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify)*: One (1)
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 14, 2010
Ronald S. Caswell, Esq.
_____
(TYPE OR PRINT NAME)

▶ [signature] ◀
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Exhibit D
Page 1 of 2

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) (if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability (not asbestos or
    toxic/environmental) (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) (not civil
    harassment) (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      (not medical or legal)
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract (not unlawful detainer
        or wrongful eviction)
    Contract/Warranty Breach–Seller
      Plaintiff (not fraud or negligence)
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage (not provisionally
    complex) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (not eminent
      domain, landlord/tenant, or
      foreclosure)

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    (arising from provisionally complex
    case type listed above) (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment (non-
      domestic relations)
    Sister State Judgment
    Administrative Agency Award
      (not unpaid taxes)
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (not specified
    above) (42)
    Declaratory Relief Only
    Injunctive Relief Only (non-
      harassment)
    Mechanics Lien
    Other Commercial Complaint
      Case (non-tort/non-complex)
    Other Civil Complaint
      (non-tort/non-complex)

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition (not specified
    above) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Page 2 of 2

Exhibit D
Page 2 of 2

Exhibit E

BC447488

| SHORT TITLE | CASE NUMBER |
|---|---|
| MMO INVESTMENTS, LLC V. LANE'S END STALLIONS INC. ET AL. | |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case

JURY TRIAL? ☐ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL ___ ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case" skip to Item III. Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check one Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III, complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100   Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110   Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070   Asbestos Property Damage | 2. |
| | | ☐ A7221   Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260   Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210   Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240   Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250   Premises Liability (e.g. slip and fall) | 1., 2., 4. |
| | | ☐ A7230   Intentional Bodily Injury/Property Damage/Wrongful Death (e.g. assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270   Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220   Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029   Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005   Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010   Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013   Fraud (no contract) | 1., 2., 3. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

## CIVIL CASE COVER SHEET ADDENDUM
## AND STATEMENT OF LOCATION

LASC, rule 2.0
Page 1 of 4

Exhibit E
Page 1 of 4

SHORT TITLE: BG INVESTMENTS, L.L.C., LAND AND CATTLE CO., ET AL.   CASE NUMBER:

| A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|
| Professional<br>Negligence<br>(25) | A6017   Legal Malpractice | 1, 2, 3 |
| | A6050   Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| Other (35) | A6025   Other Non-Personal Injury Property Damage tort | 2, 3 |
| Wrongful Termination<br>(36) | A6037   Wrongful Termination | 1, 2, 3 |
| Other Employment<br>(15) | A6024   Other Employment Complaint Case | 1, 2, 3 |
| | A6109   Labor Commissioner Appeals | 10 |
| Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | A6004 Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2, 5 |
| | A6008   Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | A6019   Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | A6028   Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| Collections<br>(09) | A6002   Collections Case-Seller Plaintiff | 2, 5, 6 |
| | A6012   Other Promissory Note/Collections Case | 2, 5 |
| Insurance Coverage<br>(18) | A6015   Insurance Coverage (not complex) | 1, 2, 5, 8 |
| Other Contract<br>(37) | A6009   Contractual Fraud | 1, 2, 3, 5 |
| | A6031   Tortious Interference | 1, 2, 3, 5 |
| | A6027   Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8 |
| Eminent<br>Domain/Inverse<br>Condemnation (14) | A7300   Eminent Domain/Condemnation     Number of parcels _____ | 2 |
| Wrongful Eviction<br>(33) | A6023   Wrongful Eviction Case | 2, 6 |
| Other Real Property<br>(26) | A6018   Mortgage Foreclosure | 2, 6 |
| | A6032   Quiet Title | 2, 6 |
| | A6060   Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| Unlawful Detainer-<br>Commercial (31) | A6021   Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2, 6 |
| Unlawful Detainer-<br>Residential (32) | A6020   Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2, 6 |
| Unlawful Detainer-<br>Drugs (38) | A6022   Unlawful Detainer-Drugs | 2, 6 |
| Asset Forfeiture (05) | A6108   Asset Forfeiture Case | 2, 6 |
| Petition re Arbitration<br>(11) | A6115   Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |

Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)
Employment
Contract
Real Property
Judicial Review Unlawful Detainer

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| PMI INVESTMENTS, LLC, V. TAMPA WEST HALLS BANK, ET AL. | |

<table>
<tr><th></th><th>A<br>Civil Case Cover Sheet<br>Category No.</th><th>B<br>Type of Action<br>(Check only one)</th><th>C<br>Applicable Reasons -<br>See Step 3 Above</th></tr>
<tr><td rowspan="3" style="writing-mode:vertical">Judicial Review (Cont'd.)</td><td rowspan="3">Writ of Mandate<br>(02)</td><td>A6151   Writ - Administrative Mandamus</td><td>2, 8</td></tr>
<tr><td>A6152   Writ - Mandamus on Limited Court Case Matter</td><td>2</td></tr>
<tr><td>A6153   Writ - Other Limited Court Case Review</td><td>2</td></tr>
<tr><td></td><td>Other Judicial Review<br>(39)</td><td>A6150   Other Writ /Judicial Review</td><td>2, 8</td></tr>
<tr><td rowspan="7" style="writing-mode:vertical">Provisionally Complex Litigation</td><td>Antitrust/Trade<br>Regulation (03)</td><td>A6003   Antitrust/Trade Regulation</td><td>1, 2, 8</td></tr>
<tr><td>Construction Defect (10)</td><td>A6007   Construction defect</td><td>1, 2, 3</td></tr>
<tr><td>Claims Involving Mass<br>Tort (40)</td><td>A6006   Claims Involving Mass Tort</td><td>1, 2, 8</td></tr>
<tr><td>Securities Litigation (28)</td><td>A6035   Securities Litigation Case</td><td>1, 2, 8</td></tr>
<tr><td>Toxic Tort<br>Environmental (30)</td><td>A6036   Toxic Tort/Environmental</td><td>1, 2, 3, 8</td></tr>
<tr><td>Insurance Coverage<br>Claims from Complex<br>Case (41)</td><td>A6014   Insurance Coverage/Subrogation (complex case only)</td><td>1, 2, 5, 8</td></tr>
<tr><td></td></tr>
<tr><td rowspan="6" style="writing-mode:vertical">Enforcement of Judgment</td><td rowspan="6">Enforcement<br>of Judgment<br>(20)</td><td>A6141   Sister State Judgment</td><td>2, 9</td></tr>
<tr><td>A6160   Abstract of Judgment</td><td>2, 6</td></tr>
<tr><td>A6107   Confession of Judgment (non-domestic relations)</td><td>2, 9</td></tr>
<tr><td>A6140   Administrative Agency Award (not unpaid taxes)</td><td>2, 8</td></tr>
<tr><td>A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax</td><td>2, 8</td></tr>
<tr><td>A6112   Other Enforcement of Judgment Case</td><td>2, 8, 9</td></tr>
<tr><td rowspan="5" style="writing-mode:vertical">Miscellaneous Civil Complaints</td><td>RICO (27)</td><td>A6033   Racketeering (RICO) Case</td><td>1, 2, 8</td></tr>
<tr><td rowspan="4">Other Complaints<br>(Not Specified Above)<br>(42)</td><td>☑ A6030   Declaratory Relief Only</td><td>1, 2, 8</td></tr>
<tr><td>A6040   Injunctive Relief Only (not domestic/harassment)</td><td>2, 8</td></tr>
<tr><td>A6011   Other Commercial Complaint Case (non-tort/non-complex)</td><td>1, 2, 8</td></tr>
<tr><td>A6000   Other Civil Complaint (non-tort/non-complex)</td><td>1, 2, 8</td></tr>
<tr><td rowspan="7" style="writing-mode:vertical">Miscellaneous Civil Petitions</td><td>Partnership/Corporation<br>Governance (21)</td><td>A6113   Partnership and Corporate Governance Case</td><td>2, 8</td></tr>
<tr><td rowspan="6">Other Petitions<br>(Not Specified Above)<br>(43)</td><td>A6121   Civil Harassment</td><td>2, 3, 9</td></tr>
<tr><td>A6123   Workplace Harassment</td><td>2, 3, 9</td></tr>
<tr><td>A6124   Elder/Dependent Adult Abuse Case</td><td>2, 3, 9</td></tr>
<tr><td>A6190   Election Contest</td><td>2</td></tr>
<tr><td>A6110   Petition for Change of Name</td><td>2, 7</td></tr>
<tr><td>A6170   Petition for Relief from Late Claim Law</td><td>2, 3, 4, 8</td></tr>
<tr><td>A6100   Other Civil Petition</td><td>2, 9</td></tr>
</table>

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

Exhibit E
Page 3 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| ROY INVESTMENTS LLC V LANE & POL STALL RO PC ET AL | |

Item III. Statement of Location  Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II. **Step 3 on Page 1** as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS:<br>3303 Sepulveda Avenue |
|---|---|
| 1  ✓2  3  4  5  6  7  8  9  10 | |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Manhattan Beach | CA | 90266 |

Item IV. *Declaration of Assignment*  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the __Los Angeles__ courthouse in the __Central__ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq. and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: __October 18, 2010__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1  Original Complaint or Petition.

2  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3  Civil Case Cover Sheet form CM-010.

4  Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5  Payment in full of the filing fee, unless fees have been waived.

6  Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 01/07)<br>LASC Approved 03-04     **CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**     LASC, rule 2.0<br>Page 4 of 4

C0070

Exhibit E<br>Page 4 of 4

Exhibit F

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

BC 447488

Case Number

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 5 | 533 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Conrad Aragon | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Rex Heeseman | 19 | 41 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Jane L. Johnson | 56 | 514 |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 |
| Hon. John A. Kronstadt | 30 | 400 | Hon. David L. Minning | 61 | 632 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Mary H. Strobe | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 |
| Hon. Amy D. Hogue | 34 | 308 | Hon. Ramona See | 69 | 621 |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | **Hon. Emilie H. Elias*** | **324** | **CCW** |
| Hon. Michelle R. Rosenblatt | 40 | 514 | Other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

*Class Actions
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH-190 (Rev. 04/09)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE**

Page 1 of 2

Exhibit F
Page 1 of 2

...being general provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

Exhibit F
Page 2 of 2

C0072

Exhibit G

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]

For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR)

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What Is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a neutral, an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate**
> Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> **Cases for Which Mediation May Not Be Appropriate**
> Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate**
> Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> **Cases for Which Arbitration May Not Be Appropriate**
> If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> **Cases for Which Neutral Evaluation May Be Appropriate**
> Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> **Cases for Which Neutral Evaluation May Not Be Appropriate**
> Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

Exhibit G
Page 1 of 2

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL

- Civil Action Mediation (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12)
- Retired Judge Settlement Conference
- Neutral Evaluation (Governed by Los Angeles Superior Court Rules, chapter 12)
- Judicial Arbitration (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12)
- Eminent Domain Mediation (Governed by Code of Civil Procedure section 1250.420)
- Civil Harassment Mediation
- Small Claims Mediation

FAMILY LAW (non-custody)

- Mediation
- Forensic Certified Public Accountant (CPA) Settlement Conference
- Settlement Conference
- Nonbinding Arbitration (Governed by Family Code section 2554)

PROBATE

- Mediation
- Settlement Conference

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

Party Select Panel — The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

Random Select Panel — The Random Select Panel consists of trained mediators, neutral evaluators and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

Private Neutral — The market rate for private neutrals can range from $300-$1,000 per hour.

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

Page 2 of 2

Exhibit G
Page 2 of 2

Exhibit H

NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp

Ronald S. Caswell, Esq
Caswell & Cannon
1625 Warnall Avenue, Suite 100
Los Angeles, CA 90024
(310) 282-8150

STATE BAR NUMBER
161113

ATTORNEY FOR (Name) Plaintiffs

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS
111 N. Hill Street, Los Angeles, CA 90012

PLAINTIFF
KNC Investments, LLC and Jerry Jamgotchian

DEFENDANT
Lane's End Stallions, Inc., et al.

RECEIVED
OCT 15 2010
ROOM 102

## AFFIDAVIT OF PREJUDICE
PEREMPTORY CHALLENGE TO JUDICIAL OFFICER
(Code Civ. Proc., § 170.6)

CASE NUMBER
BC 447486

| Name of Judicial Officer | Dept./Div. Number |
|---|---|
| The Honorable Conrad Aragon | 49 |

☑ Judge ☐ Commissioner ☐ Referee

I am a party (or attorney for a party) to this action or special proceeding. The judicial officer named above, before whom the trial of or a hearing in, this case is pending, or to whom it has been assigned, is prejudiced against the party (or his or her attorney) or the interest of the party (or his or her attorney), so that declarant cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judicial officer.

---

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct

| Date: | Signature of Declarant | KNC Investments & Jamgotchian |
|---|---|---|
| October 15 2010 | | (Name of Party) |
| | | ☑ Plaintiff       Cross Complainant |
| | | ☐ Defendant       Cross Defendant |

LACIV 015 (Rev. 01/07)
LASC Approved 04-04

## AFFIDAVIT OF PREJUDICE
PEREMPTORY CHALLENGE TO JUDICIAL OFFICER

Code Civ. Proc., § 170.6

Exhibit H
Page 1 of 1

# Exhibit I

1  Ronald S. Caswell (SBN 161113)
   CASWELL & CANNON
2  1625 Warnall Avenue, Suite 100
   Los Angeles, California 90024
3  Telephone: (310) 282-8150
   Facsimile: (310) 282-8140
4

5  Attorney for Plaintiffs,
   KNC INVESTMENTS, LLC, and JERRY
6  JAMGOTCHIAN

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF LOS ANGELES

10

11 KNC INVESTMENTS, LLC, a California    ) CASE NO. BC 447488
   limited liability company; and JERRY  ) [Case Assigned for all purposes to the Hon.
12 JAMGOTCHIAN, an individual,           ) Soussan G. Bruguera, Dept. 71]
                                         )
13              Plaintiffs,              )
                                         ) NOTICE OF RULING RE
14 vs.                                   ) PEREMPTORY CHALLENGE
                                         )
15 LANE'S END STALLIONS, INC., a Texas   )
   corporation; ASHLEY ANDREWS, an       )
16 individual; ROBERT B. RAPHAELSON, an  )
   individual; and DOES 1 through 10, inclusive, )
17                                       )
              Defendants.                )
18

19     TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

20     PLEASE TAKE NOTICE that the Court has ruled as follows: Plaintiffs' peremptory

21 challenge under Code of Civil Procedure Section 170.6 was accepted and granted by the Court,

22 which has reassigned this matter for all purposes to Department 71 of the above entitled court, the

23 Hon. Soussan G. Bruguera presiding. Plaintiffs were ordered to give notice of the ruling. A true and

24 correct copy of the Court's Minute Order is attached hereto as Exhibit "A."

25 DATED: October 28, 2010              CASWELL & CANNON

26
                                        By: _____
27                                          Ronald S. Caswell
                                            Attorneys for Plaintiffs, KNC INVESTMENTS
28                                          LLC and JERRY JAMGOTCHIAN

                    NOTICE OF RULING RE PEREMPTORY CHALLENGE
                                        1
                                    C0076                    Exhibit I
                                                             Page 1 of 5

1

## PROOF OF SERVICE

2

Section 1013A (3)

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4
5

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1625 Warnall Avenue, Suite 100, Los Angeles, California 90024.

6
7

    On October 29, 2010, I served the foregoing documents described as: NOTICE OF RULING RE PEREMPTORY CHALLENGE on interested parties as follows:

8

David T. Faughn, Esq.
Miller, Griffin & Marks, PSC
271 West Short Street

9

Security Trust Building, Ste. 600
Lexington, KY 40507-1292

10

Attorneys for Dft. Ashley Andrews

11

12
13

  __X__  **(BY MAIL)** I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Los Angeles, California. I am readily familiar with the practice of Caswell & Associates for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

14
15

  ____  **(BY PERSONAL SERVICE)** I caused the above-mentioned document to be hand delivered on the same date.

16
17

  ____  **(BY FACSIMILE)** The above-referenced document was transmitted by facsimile transmissi‹ to the parties described herein; the transmission was reported as completed and without error.

18
19

  ____  **(BY FEDERAL EXPRESS)** I am readily familiar with the practice of Caswell & Associate: for collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintainec by Federal Express for overnight delivery.

20
21

  __X__  **STATE** I declare under penalty of perjury under the laws of the State of California that the abo is true and correct.

22

  ____  **FEDERAL** I declare that I am employed in the office of a member of the bar of this court ¿ whose direction this service was made.

23

    Executed on October 29, 2010, at Los Angeles, California.

24
25

    I declare under penalty of perjury under the laws of the State of California that the foregoing true and correct.

26

Ronald S. Caswell

27

28

Exhibit I
Page 2 of 5

# EXHIBIT A

Exhibit I
Page 3 of 5

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 10/26/10

DEPT. 1

HONORABLE ELIHU M. BERLE          JUDGE  J. JONES          DEPUTY CLERK

HONORABLE                JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR

J. BALTAZAR, C.A.     Deputy Sheriff  NONE          Reporter

3:35 pm BC447488

KNC INVESTMENTS LLC
VS
LANES END STALLIONS INC ET AL

CCP 170.6 Judge C.R. Aragon

| | |
|---|---|
| Plaintiff Counsel | NO APPEARANCE |
| Defendant Counsel | NO APPEARANCE |

**NATURE OF PROCEEDINGS:**

170.6 CCP RE-ASSIGNMENT

Good cause appearing and on order of the Court, the
above matter is reassigned from Department 49, Judge
Conrad R. Aragon to Department 71, Judge Soussan G.
Bruguera, for all further proceedings.

If any appearing party has not yet exercised
a peremptory challenge under 170.6 CCP, peremptory
challenges by them to the newly assigned judge must be
timely filed within the 10 day period specified in
Section 170.6 CCP, with extensions of time pursuant
to CCP 1013 if service is by mail.  Previously non-
appearing parties, if any, have a 15-day statutory
period from first appearance to file a peremptory
challenge (68616(1) Govt. Code).

Moving party to give notice.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
10-26-10 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope

Page   1 of   2     DEPT. 1

MINUTES ENTERED
10/26/10
COUNTY CLERK

C0079

Exhibit I
Page 4 of 5

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 10/26/10 | | | | DEPT. 1 |
|---|---|---|---|---|
| HONORABLE ELIHU M. BERLE | JUDGE | J. JONES | | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | | ELECTRONIC RECORDING MONITOR |
| J. BALTAZAR, C.A. | Deputy Sheriff | NONE | | Reporter |

3:35 pm | BC447488

KNC INVESTMENTS LLC
VS
LANES END STALLIONS INC ET AL

Plaintiff Counsel    NO APPEARANCE

Defendant Counsel    NO APPEARANCE

CCP 170.6 Judge C.R. Aragon

NATURE OF PROCEEDINGS:

for each, addressed as shown below with the postage
thereon fully prepaid.

Date: October 26, 2010

John A. Clarke, Executive Officer/Clerk

By: _____
       J. JONES

Ronald S. Caswell, Esq.
CASWELL & CANNON
1625 Warnall Avenue, Suite 100
Los Angeles, CA 90024

Page   2 of   2    DEPT. 1

MINUTES ENTERED
10/26/10
COUNTY CLERK

Exhibit I
Page 5 of 5

# Exhibit J

1 | Ronald S. Caswell (SBN 161113)
CASWELL & CANNON
2 | 1625 Warnall Avenue, Suite 100
Los Angeles, California 90024
3 | Telephone:  (310) 282-8150
Facsimile:  (310) 282-8140
4

5 | Attorney for Plaintiffs,
KNC INVESTMENTS, LLC, and JERRY
6 | JAMGOTCHIAN

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF LOS ANGELES

10

11 | KNC INVESTMENTS, LLC, a California | ) | CASE NO. BC 447488
limited liability company; and JERRY | ) | [Case Assigned for all purposes to the Hon.
12 | JAMGOTCHIAN, an individual, | ) | Soussan G. Bruguera, Dept. 71]
 | )
13 | Plaintiffs, | ) | NOTICE  OF  CASE  MANAGEMENT
 | ) | CONFERENCE
14 | vs. | )
 | ) | Date:      January 10, 2011
15 | LANE'S END STALLIONS, INC., a Texas | ) | Time:      9:30 a.m.
corporation; ASHLEY ANDREWS, an | ) | Dept.:      71
16 | individual; ROBERT B. RAPHAELSON, an | )
individual; and DOES 1 through 10, inclusive, | ) | Case Filed:    October 14, 2010
17 | | )
 | Defendants. | )
18

19 | TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

20 |     PLEASE TAKE NOTICE that the above-entitled matter has been set for a Case Management

21 | Conference on January 10, 2011, at 9:30 a.m., in Department 71 of the above-entitled Court.  A copy

22 | of the Court's Minute Order is attached hereto as Exhibit "A."

23 | DATED: November 1, 2010      CASWELL & CANNON

24

25 | By:_____

26 |     Ronald S. Caswell
Attorneys for Plaintiffs, KNC INVESTMENTS,
27 | LLC and JERRY JAMGOTCHIAN

28

---

1

**PROOF OF SERVICE**

2

Section 1013A (3)

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1625 Warnall Avenue, Suite 100, Los Angeles, California 90024.

5

6

    On November 1, 2010, I served the foregoing documents described as: NOTICE OF CASE MANAGEMENT CONFERENCE on interested parties as follows:

7

8    David T. Faughn, Esq.
    Miller, Griffin & Marks, PSC
    271 West Short Street

9    Security Trust Building, Ste. 600
    Lexington, KY 40507-1292

10    Attorneys for Dft. Ashley Andrews

11

  **X**   **(BY MAIL)** I caused each such envelope, with postage thereon fully prepaid, to be placed in

12    the United States mail at Los Angeles, California. I am readily familiar with the practice of Caswell & Associates for collection and processing of correspondence for mailing, said practice

13    being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

14

  ___   **(BY PERSONAL SERVICE)** I caused the above-mentioned document to be hand delivered

15    on the same date.

16  ___   **(BY FACSIMILE)** The above-referenced document was transmitted by facsimile transmission

17    to the parties described herein; the transmission was reported as completed and without error.

18  ___   **(BY FEDERAL EXPRESS)** I am readily familiar with the practice of Caswell & Associates for collection and processing of correspondence for overnight delivery and know that the

19    document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

20  **X**   **STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

21

  ___   **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at

22    whose direction this service was made.

23

Executed on November 1, 2010, at Los Angeles, California.

24

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

25

26    Ronald S. Caswell

27

28

# EXHIBIT A

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 29 2010 STAMP

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
CYNTHIA RANDLE

NOTICE SENT TO:

Caswell, Ronald S., Esq.
Caswell & Cannon
1625 Warnall Avenue, Suite 100
Los Angeles,        CA  90024

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | CASE NUMBER |
|---|---|
| KNC INVESTMENTS LLC      Plaintiff(s), <br><br> VS. <br><br> LANES END STALLIONS INC ET AL      Defendant(s). | BC447488 <br><br><br> **NOTICE OF CASE MANAGEMENT CONFERENCE** |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for  January 10, 2011  at  9:30 am  in  Dept. 71 at 111 North Hill Street, Los Angeles, California  90012.

**NOTICE TO DEFENDANT:**     **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedeure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date: October 29, 2010

Soussan G. Bruguera
_____
Judicial Officer

### CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[  ] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[  ] by personally giving the party notice upon filing the complaint.
Date: October 29, 2010

John A. Clarke, Executive Officer/Clerk

by _____ C. Randle _____ , Deputy Clerk

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

Exhibit J
Page 4 of 4

C0084

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 3130 Wilshire Boulevard, Suite 500, Santa Monica, California 90403-2351.

On November 18, 2010, I served true copies of the following document(s) described as **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)** on the interested parties in this action as follows:

Ronald S. Caswell                   William C. Rambicure
Caswell & Cannon                    Rambicure Law Group, PSC
1625 Warnall Avenue, Suite 100      219 East High Street
Los Angeles, CA 90024               PO Box 34188
Phone: (310) 282-8150               Lexington KY 40588-4188
Fax: (310) 282-8140                 rambicure@rlglex.com
Counsel for KNC Investments, LLC and Counsel for Robert Raphaelson
Jerry Jamgotchian

David T. Faughn
Miller, Griffin & Marks, PSC
271 West Short Street
Security Trust Building, Ste 600
Lexington, KY 40507-1292
dfaughn@kentuckylaw.com
Counsel for Ashley Andrews

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Conkle, Kremer & Engel's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 18, 2010, at Santa Monica, California.

Julie Black

2220.002\9995

NOTICE OF REMOVAL OF ACTION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV10- 8880 MMM (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS   (Check box if you are representing yourself ☐ ) | DEFENDANTS |
|---|---|
| KNC INVESTMENTS, LLC. a California limited liability company, and JERRY JAMGOTCHIAN, an individual, | LANE'S END STALLIONS, INC., a Texas corporation; ASHLEY ANDREWS, ASHLEY ANDREWS, an individual; ROBERT B. RAPHAELSON, an individual; and DOES 1 through 10, inclusive, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Ronald S. Caswell<br>Caswell & Cannon<br>1625 Warnall Avenue, Suite 100<br>Los Angeles, CA  90024<br>(310) 282-8150<br>Attorneys for KNC Investments and Jerry Jamgotchian | John C. Conkle<br>Jonathan Medrano<br>Conkle, Kremer & Engel, PLC<br>3130 Wilshire Blvd., Suite 500<br>Santa Monica, CA 90403  (310) 998-9100<br>Attorneys for Lane's End Stallions, Inc. |

**II.   BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V.   REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ None, Decl. Relief

**VI.   CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Removal of Action Under 28 U.S.C. § 1441(b) (Diversity).

**VII.   NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV |  | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations |  | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise |  | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY |  |  | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation |  | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | IMMIGRATION |  | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights |  | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions |  |  | ☐ 871 IRS - Third Party 26 USC 7609 |
|  | ☐ 290 All Other Real Property |  |  |  |  |

FOR OFFICE USE ONLY:   Case Number:  **CV 10   8880**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CCD-JS44

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES:  Has this action been previously filed in this court and dismissed, remanded or closed? [X] No [ ] Yes

If yes, list case number(s):

VIII(b).  RELATED CASES:  Have any cases been previously filed in this court that are related to the present case? [X] No [ ] Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX.  VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
    [ ]  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
    [ ]  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Texas, Connecticut and Nevada |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Kentucky |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _Jonathan Medrano_     Date November 18, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |